## Henry Clayton v. The State.

### No. 3750.   Decided November 24, 1915.

**1.—Perjury—Continuance—Witness Under Rule—Motion for New Trial.**

Where, upon trial of perjury, defendant made his first application for a continuance for two absent witnesses whose testimony was material, and was refused by the court to introduce three other witnesses who were in the courtroom, because they had not been placed under the rule which defendant invoked, and whose testimony was also material, and was thus deprived of the testimony of five of his most material witnesses whose testimony went direct to the

issues involved, and would support defendant's testimony and that of another witness, upon which he was forced to rely, the court should have granted a new trial. Prendergast, Presiding Judge, dissenting, because defendant had not used diligence in securing one of the absent witnesses, and immateriality of testimony of the other, and had invoked the rule as to the three others.

### 2.—Same—Evidence—Result of Other Trials.

The result of other trials of some of the witnesses for the defense should not have been introduced in evidence, but where• the court permitted the State to prove that one of these witnesses pleaded guilty to a charge of being a common gambler, the defendant should have been permitted to show that the other witnesses contested their cases and were adjudged not guilty.

### 3.—Same—Term of Punishment—Charge of Court—Fundamental Error—Article 743.

Where, upon trial of perjury, the court instructed the jury that the punishment for perjury was not less than five nor more than ten years, instead of not less than two, etc., as the law directs, and the jury assessed the punishment at a term of five years, the same was reversible error, although defendant took no exceptions to the charge of the court when it was submitted to him, and complained for the first time of this error in a motion for new trial, as the same was fundamental error. Prendergast, Presiding Judge, dissenting, citing article 743, Code Criminal Procedure.

### 4.—Same—Witnesses—Accomplice—Accessory—Principal—Conspiracy.

That two or more witnesses were indicted for perjury on account of their testimony in a given case, would not render them incompetent, unless it was contended that they had entered into a conspiracy to do so, or were charged as accomplice, accessory, or principals, in the commission of the offense for which the accused is on trial. Following Anderson v. State, 56 Texas Crim. Rep., 360, and other cases. Prendergast, Presiding Judge, questioning their competency.

Appeal from the District Court of Fayette. Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction of perjury; penalty, five years confinement in the penitentiary.

The court gave the following reasons for not permitting the witnesses Rich Henderson, Will Zachary, and Will Stewart to testify, in his qualification of defendant's bill of exceptions:

"The above named witnesses were in the courtroom at the time counsel for defendant invoked the rule; all other witnesses were placed under the rule, and were retired from the courtroom under proper instructions, and after the State had rested, defendant offered these witnesses, who had not theretofore been sworn, and who had remained in the courtroom, and heard the greater part of the trial, and especially, a greater part of the State's case. If counsel instructed these parties to stay out of the courtroom, the court was not so advised during the trial, and said negro witnesses did not stay out of the courtroom during the examination of the principal State's witnesses, and the rule having been invoked by counsel for defendant, and no valid reason appearing why said rule should be modified, the objection by the State was sustained for the reasons assigned in State's contest to motion for new trial as set out in paragraph No. 7, and made a part hereof, as follows: 'The court did not err as alleged in defendant's motion for a new trial in section

22 in refusing to permit the witnesses Rich Henderson, Will Zackary, and Will Stewart to testify, because defendant's counsel had invoked the rule as to witnesses, and failed and refused to have the said three above named witnesses sworn with the other witnesses, and placed under the rule, and all three were in attendance upon the court, and were in the courtroom when the other witnesses were sworn and placed under the rule, and after they had heard a part, if not all, of the State's witnesses testify, defendant's counsel then sought to have these three witnesses to testify in the case in behalf of the defendant. To have permitted them to testify would have been an injustice to the State, especially in view of the fact that all three of them then had indictments pending against them wherein they were charged with perjury alleged to have been committed in the trial of the same case in the County Court in which it is alleged this defendant committed perjury.' "

The court also made the following qualification to defendant's bill of exceptions, overruling his motion for continuance, and subsequent motion for new trial for the absence of his witnesses Perry Hornsby and Will Siefkin, as' follows:

"The motion for continuance was contested by the State and application was overruled, and same was assigned as error in defendant's motion for new trial, which was likewise contested by the State. It appears from the record in the case that the testimony of Will Siefkin was not material to the defense, as shown by his affidavit attached to and made a part of State's contest to new trial, and also made a part of this qualification; and it appears that counsel for defendant failed to use due diligence to obtain the testimony of the witness Perry Hornsby, as is shown by State's contest to motion for new trial, paragraph 3, and affidavit of the district clerk, all of which is made a part hereof. Counsel for defendant failed or refused to inform the clerk whether witness Hornsby was white or black, or give him any assistance to locate said witness other than shown by clerk's affidavit."

Paragraph 3 of State's contest is as follows:

"The court did not err in refusing to grant defendant's application for a continuance on account of the absence of Perry Hornsby because one of the attorneys of record for the defendant, in filing his application with the district clerk for his witnesses, simply stated in his application, the following: 'Perry Hornsby, Plum, Texas, or Cameron, Texas,' as is shown by the application of defendant for subpoenas for witnesses filed herein on May 3, 1915, marked exhibit A, attached hereto, and made a part hereof; that the district clerk, at the time, asked said attorney, Jno. T. Duncan, to give him some better description as to the avocation and location of said witness, which the said attorney failed and refused to do, as shown by the affidavit of the district clerk hertao attached, marked exhibit B, and made a part hereof; that thereafter, towit, on May 6, 1915, four days prior to the time that this cause was set down for trial, the district clerk received a postal card from Allen Hooks, sheriff of Milam County, requesting some further description of the witness Hornsby; that this postal card was filed with

the papers in this cause on May 6, 1915, which card is hereto attached, marked exhibit C, and made a part hereof; that defendant and his counsel made no effort to procure the attendance of this witness, except as is set out in the application, marked exhibit A, as stated above."

Paragraph 4:

"Contestant says that the testimony of the witness Will Seifkin would be irrelevant and immaterial to any issue in the trial of this cause, as is shown by his affidavit hereto attached, marked exhibit D, and made a part hereof.

*Jno. T. Duncan* and *Aaron Burleson,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of admitting in evidence result of other trials: Hill v. State, 22 Texas Crim. App., 579; Hutcherson v. State, 33 Texas Crim. Rep., 67.

On question of placing witnesses under rule: Blackwell v. State, 29 Texas Crim. App., 194; Cook v. State, 30 id., 607; Leache v. State, 22 id., 279; Bond v. State, 20 id., 421; George v. State, 17 id., 513; Creswell v. State, 14 id., 1; Hoy v. State, 11 id., 32.

HARPER, JUDGE.—Appellant was convicted of perjury, and his punishment assessed at five years confinement in the State penitentiary.

It appears that one Rich Henderson was tried in the County Court on an information containing two counts, one charging that on the 11th day of November, 1913, the said Henderson did unlawfully bet and wager money at a game played with cards; the other count charging that Henderson did knowingly go into and remain at a place where a game of cards was being played. On the trial of that case it is alleged that appellant testified that there was no card playing going on in the room alleged at that time, and that Henderson was not present in said room at the time alleged, and upon this testimony the charge of perjury is based.

That appellant was duly sworn and so testified on the trial of said Henderson is not contested, he contending on this trial that he did so testify, and that his testimony was true. To show the materiality of the hereinafter recited matters, we will quote one paragraph of the court's charge: "You are further instructed if you find from the evidence, or have a reasonable doubt thereof that the said Rich Henderson, referred to in said indictment, was not in fact present at the time and place of the alleged games of cards, if any, in the town of Plum, referred to in the indictment in this case, then, in that event, you will find the defendant not guilty." Thus it is seen the court, under this record, made the guilt or innocence depend on the presence of Rich Henderson in the room where the gambling is said to have taken place.

On the trial of the case J. M. Richardson testified he was a deputy sheriff, and that he went into this room and they were playing cards; that he took down the names of some ten men in the room, and filed a

complaint against them; that he did not take down the name of appel-.
lant, nor Rich Henderson; that someone got out of the window, and
he was afterwards informed that it was Rich Henderson who got out
the window, and a complaint was filed against him. Appellant, on the
trial of the Rich Henderson case, and on the trial of this case, swore
he was the person who got out of the window, and that it was not Rich
Henderson. Under this record it is manifest, under the charge of the
court, if it was appellant who got out of the window and not Henderson,
he was entitled to be acquitted. The whole case hinges around the
identification of the man who got out of the window, the State's case
being that it was Rich Henderson, and appellant's, that he was the man
who got out of the window.

The indictment against appellant was returned April 30, when he
was arrested. On May 3, among other witnesses he secured process
for Will Siefken to Jackson County, and to Milam County for Perry
Hornsby. Neither of them were in attendance on court, and when the
case was called for trial on May 10, appellant moved to continue the
case on account of their absence. This was the first application for
continuance. So the question of cumulative testimony is immaterial.
By the witness Perry Hornsby he stated he expected to prove "that he
was in the house in the rear of Morgan's saloon where it is claimed
that Rich Henderson was dealing Monte and other persons were present
and by the witness Perry Hornsby this defendant expects to prove that
he was in Morgan's saloon at the same time the witness J. M. Richard-
son was in said saloon and that the said Perry Hornsby entered said
room just in advance or just ahead of the State witness, J. M. Richard-
son, and by this witness the defendant expects to prove that Henderson
was not present and was not gambling or dealing Monte and by this
witness this defendant expects to prove that no gambling was going on
in said room at the time."

The State's witness, Richardson, testified he went from the saloon
to this room where he says gambling was going on, and the testimony
of this witness Hornsby would be in direct conflict with the testimony
of Richardson. The materiality of this testimony is not questioned
by the court, but he says that appellant did not use diligence, in that
after the sheriff of Milam County had received the process he wrote to
the district clerk of Fayette County: "You sent me subpoena for Perry
Hornsby. Can't locate him. Is he white or colored? Where does he
live? Give all information about him." The clerk received this re-
quest on May 6th and filed it with the papers, but did not answer nor
call appellant's attention to it, and appellant and his counsel say they
had no information in regard to it until this case was called for trial.

As to the witness Siefken, the State attaches his affidavit to its con-
test of appellant's motion for new trial, evidencing that he in fact was
in Jackson County, and if process had been properly served when sent
his attendance could have been obtained. In the affidavit he states he
did not see who got out of the window, but says he was told at the
time it was appellant and not Henderson, by Will Steward. If this

was all that appellant stated he expected to prove by him, it would not present error, as the court did not permit Will Steward to testify. If Steward had been permitted to testify, and it was sought by the State to impeach his testimony, then the testimony would have been admissible, but in addition to this, appellant swears he expected to prove by Siefken the following facts: "The evidence for the State and the defense will show that there were ten or twelve parties in said room at the time the said Richardson entered, and the evidence will show that one party in said room made his escape out of a window. And the chief issue in the trial of Rich Henderson in the County Court was as to whether Rich Henderson was in said room at the time it was entered by the said Richardson and whether or not Rich Henderson made his escape out of said window and by the witness Siefken it is expected to be proven that he entered said room shortly after it was entered by the State witness Richardson and he will swear that he saw no gambling going on, that he saw no cards on the table and no money on the table, and that the house was not a gambling house and was not used for that purpose, and that if it was used at all it was used by persons who desired to drink beer or other liquors privately; and, further, that said absent witness saw this defendant in the village of Plum on that day and he did not see Rich Henderson and this defendant at the time he was pointed out to said witness as the party who got out the window."

Thus it is seen that appellant states he can prove by Siefken that he went into this room and will swear he saw no gambling going on; that he saw no cards on the table, and that the room was not used for a gaming room, but one in which to drink beer. This was on a material issue in the case, and he says, furthermore, that witness will swear he saw appellant there at the saloon and did not see Henderson. This would have an indirect, if not a direct, bearing on which one of the two got out of the window, and Siefken's affidavit and testimony given on the trial of the case in the County Court show he would have so testified.

If this was the only matter complained of in the record we might hesitate to reverse the case on account thereof, taking into consideration the qualification attached to the bill by the court. But in another bill it is shown that during the trial of the case appellant called Rich Henderson, Will Zachary and Will Stewart as witnesses in his behalf, and states: "By the witness Rich Henderson the defendant expected to prove that he was not at Plum on the 11th day of November, 1913, and was not in the room in the rear of Morgan's saloon on that day or at any other date. That at the time when this alleged offense was committed that he was at work for Dr. Crutzbauer on Dr. Crutzbauer's farm, over seven miles distant from Plum or from Morgan's saloon. That he was not in the said building and was not the person who got out the window when Richardson and his witnesses appeared at the door of the room and arrested all the parties remaining in said room.

This is the person who appellant is alleged to have testified falsely was not present on the occasion mentioned.

"By the witness Will Stewart he expected to prove that he, Will Stewart, was in said room at the time Richardson entered the same and that Will Stewart knew Rich Henderson, and by Will Stewart he expected to prove that Rich Henderson was not in said room at that time or at any time before or at any time thereafter while the said Richardson was arresting or attempting to arrest the parties in said room, and by said Will Stewart he expected to prove that he (Henry Clayton) jumped out the window and made his escape; and that Rich Henderson was not in the room and Rich Henderson did not get out that window.

"By the witness Will Zachary he expected to prove and would have proven that Zachary was in said house when Richardson and his assistant witnesses entered the same. That Will Zachary knew Rich Henderson and that Rich Henderson was not in said room and had not been in said room and that Rich Henderson was not the party who got out the window, but the defendant was the party that got out the window."

It is thus seen that the testimony of each of these witnesses would have borne directly upon the material issues in the case. The court excluded each of the three witnesses named on the ground that the rule had been demanded by appellant, and these witnesses had heard a portion of the testimony offered by the State before they were placed under the rule. Appellant was deprived of the testimony of five of his most material witnesses, whose testimony went direct to the issues involved, and the testimony of all of whom would support appellant's testimony and his contention. He was forced to rely on the testimony of himself and Louis Burrell alone, on the issue as to whether gambling was going on in the room and whether or not Henderson was in the room. Ordinarily we will not disturb the action of the court in excluding testimony where the rule has been invoked. It is a matter confided to the trial court's sound discretion. But in a case like this where the person on trial has been deprived of all his witnesses (except one) on the material issues in the case, and it is made to appear that they would testify to these material facts, three of them being in attendance on court, and through no fault of appellant he has been deprived of their testimony, we are inclined to think the court erred in not granting him a new trial. Each of the bills might not in and of themselves present reversible error, but when we consider them together and see that appellant was deprived of the testimony of five of his most material witnesses—a greater number than who testified for the State that gambling was going on in the room, and that Henderson was present, it appears that appellant has not had the issue of his guilt or innocence fairly determined. If Henderson was not present, as the testimony of all of these witnesses would tend to show, then the Sate's case must and would fail, for he is the man the State's witnesses say was dealing the cards. So the question of his presence on this occa-

sion, as shown by the charge of the court, was necessary to be shown, and the testimony of all five of these witnesses would tend strongly to negative his presence in the room on that occasion.

The result of the trial of Rich Henderson in the County Court could not ordinarily be shown, and the court would not err in so holding. The result of his trial, and that of any of the others charged with gaming on that occasion would not be admissible on this trial, and on another trial the court should not only exclude the testimony as to the result of that trial, but exclude as well the result of the trial of any and all the others. However, on this trial the court permitted the State to prove that one of the men, Will Zachary, plead guilty to a charge of being a common gambler, filed against him on the occasion in question. If the State was permitted to prove that one of them plead guilty to being a common gambler, then in justice and fairness appellant ought to have been permitted to prove that those charged on that occasion who contested their cases were adjudged not guilty. This would be but common fairness, and especially does the injustice appear in this case when it is shown that Will Zachary was one of the witnesses for defendant who was not permitted by the court to testify, and who, the bill shows, would have testified in behalf of appellant that Henderson was not present, and doubtless would have explained why his plea of guilty to being a common gambler was entered. However, on another trial the court will exclude the result of the trials of all the others, whether adjudged guilty or not guilty, for as the court or jury found in those cases should not be used to affect the finding of the jury in this case. They should pass on that question uninfluenced by the verdict or finding in any other case.

Again, the court instructed the jury that the punishment for perjury was not less than five years, nor more than ten years, and instructed the jury if they found appellant guilty to assess his punishment at not less than five years, nor more than ten years. The jury assessed the punishment at the least term authorized by the charge—five years. The State admits this was error, as the statute fixes the minimum punishment at not less than two years (art. 310, P. C.). While admitting this was error, the State insists that as the charge was submitted to appellant's counsel, and no exception was taken to the charge in this respect, that it was too late to complain of this error in the charge after verdict in the motion for a new trial, and cites us to the cases of Manning v. State, 46 Texas Crim. Rep., 326; Robbins v. State, 57 Texas Crim. Rep., 8; Work v. State, 3 Texas Crim. App., 233. Also a large number of other cases wherein we have held, since the amendment of old article 723 (now 743) if the charge is submitted to appellant's counsel, we will not reverse the case if exception is not reserved at that time. This is the general rule, and one to which we have always heretofore and will hereafter adhere, but to each and all of those instances an exception has been noted, and that is where fundamental error is shown, we will take notice of it, even though complained of for the first time in this court. Many cases have been reversed because

of fatal defects in the indictment, although complained of for the first
time in this court. (Hunter v. State, 73 Texas Crim. Rep., 469;
Roberson v. State, 41 Texas, 65.) Cases have been reversed because
the court authorized a conviction for assault to rape when the indict-
ment charged attempt to rape. (Shockley v. State, 71 Texas Crim.
Rep., 475; Wyvias v. State, 64 Texas Crim. Rep., 236, 142 S. W. Rep.,
585.) Many other similar instances could be cited where cases have
been reversed, although not complained of until after verdict, if the
error pointed out was a fundamental one. So the question in this
case, as the error was not pointed out until verdict, is the error a fun-
damental one? If it is, we are authorized to review the action of the
trial court in refusing to grant a new trial because of said error. If
it is not a fundamental error, then, as appellant did not except to the
charge when presented to him, we can not review the action of the
trial court in overruling the motion for a new trial because of said
error admitted to be in the charge of the court. What is, and what is
not fundamental error has been many times discussed, but no definite
rule has been announced by our decisions, so far as we have been able
to ascertain. The contention that this is not a fundamental error has
support in the cases of Work, Robbins, and Manning, supra. In the
Work case the court erroneously instructed the jury as to the punish-
ment for aggravated assault, but as the jury assessed the minimum
punishment authorized by law, such error was held not to be ground
for reversal, although the case was reversed on other grounds. In the
Robbins' case the minimum punishment was also assessed, and author-
ized by the charge, although the punishment was not correctly stated.
It was held too late to complain of the matter after verdict. In the
Manning case the appellant was charged with perjury, and the court
in that case made the same mistake in his charge as was made by the
court in this case—fixing the minimum punishment at five years, when
it should have been only two years. The court held that as the pun-
ishment was assessed at seven years, and was within the limit fixed by
law, it was too late to complain of the matter after verdict. If this was
an original proposition, the writer would hold that where the court
incorrectly stated the minimum punishment, and the verdict of the
jury assessed more than the minimum punishment fixed by law, it
would be such an error as could be complained of at any time. The
jury in this case gave the minimum punishment authorized by the
charge of the court, and who can say they would not have assessed the
minimum fixed by law had the court authorized them to do so in his
charge? Three years taken out of one's life by confinement in the
penitentiary is a great length of time, and we nor anyone else can say,
under this record, that if the law had been correctly stated in the charge
to the jury they would have assessed more than the minimum fixed by
the law as punishment for this crime. Our civil courts have held:
"That error is a fundamental error which goes to the merits of plain-
tiff's cause and will be considered, whether assigned as error or not,
where the justice of the case seems to require it." (Hollywood v. Wel-

hausen, 68 S. W. Rep., 329; City of Laredo v. Russell, 56 Texas, 398.) See also Jenkins v. State, 28 Texas Crim. App., 86; Graham v. State, 29 Texas Crim. App., 31; Williams v. State, 25 Texas Crim. App., 76, and cases cited in sec. 2348, Willson's Criminal Code.

In the Work and Robbins cases the minimum punishment authorized by law was assessed, and we think the court correctly held such error under such circumstances presented no reversible error. In the Manning case more than the minimum authorized by the court in his charge was assessed. So it could not be said if the court had authorized a lower punishment the jury would have assessed it. But this case is different from either of those cases—the jury did assess the lowest punishment authorized by the charge of the court, but more than double the minimum punishment fixed by law. In this character of case the writer thinks such error should be considered, even though not complained of until in the motion for a new trial. This gives the trial court an opportunity to correct his own errors, and award a new trial, and where one is manifest, and admitted to be error, and which error may have contributed to more than doubling the punishment that might otherwise have been assessed against one on trial, a new trial should have been granted. At least, this case should be reversed on account of the other matters herein discussed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE.—1. The State contested appellant's motion for a continuance, and also his motion for new trial on the same ground. The court correctly overruled both, and gave the reasons in his qualification of his bill, which are borne out fully by the record. The Reporter will quote the judge's qualification on pages 57 and 78 of the record.

2. The witnesses Rich Henderson, Will Zachary and Will Stewart sought to be introduced by appellant were under indictment for perjury in the same case and transaction as appellant was in this case. Under the proper construction of article 91, Penal Code, and article 791, Code of Criminal Procedure, I think they ought to be held incompetent (Crutchfield v. State, 7 Texas Crim. App., 65), but even if they were not incompetent, the court was right in refusing to permit them to testify because appellant had not had them placed under the rule. The Reporter will quote the court's qualification of appellant's bill on pages 44 and 80 of the record.

3. The statute by the Act of April 5, 1913, page 278, was passed expressly for the purpose of preventing new trials and reversals because of just such inadvertent omissions as to the penalty in the court's charge as was made in this case, and such an error is not and can not be fundamental. If advantage can be taken of such an error by motion for new trial, then the statute is vain and ineffective; but it is not so as all the time heretofore held by this court construing it. This case should not be reversed but affirmed.

HARPER, JUDGE.—I did not know, at the time of writing the original opinion, it would be contended that as the witnesses were indicted for perjury, that this would render them incompetent as witnesses, and did not discuss that feature. That two or more witnesses were indicted for perjury on account of their testimony in a given case, would not render them incompetent, unless it was contended they had entered into a conspiracy to do so, and they had been so indicted. An indictment does not render a person incompetent as a witness, unless the witness is charged with being an accomplice, accessory or principal in the commission of an offense for which the person is on trial. (Art. 791, C. C. P.) Secker v. State, 28 Texas Crim. App., 479; Gray v. State, 24 Texas Crim. App., 611. Anderson v. State, 56 Texas Crim. Rep., 360, is strictly in point.