John Will WEBB, Appellant,

v.

The STATE of Texas, Appellee.

No. 074–87.

Court of Criminal Appeals of Texas.

Feb. 15, 1989.

Gary A. Udashen, Dallas, for appellant.

John Vance, Dist. Atty. & Patricia Poppoff Noble & Gary A. Moore, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for State.

Before McCORMICK, P.J., and W.C. DAVIS, WHITE and BERCHELMANN, JJ.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted in a joint trial of aggravated robbery and assessed 55 years in the Department of Corrections. V.T.C.A. Penal Code, § 29.03. Two co-defendants, Keith Busby and appellant's brother Clinton Webb, were also convicted of aggravated robbery in the same trial. The convictions and sentences of both co-defendants were reversed on direct appeal by the Dallas Court of Appeals. *Busby v. State,* 722 S.W.2d 154 (Tex.App.—Dallas 1986). Appellant's conviction was affirmed in an unpublished opinion by the appeals court. *Webb v. State,* No. 05-85-01404-CR (Tex. App.—Dallas, Dec. 1, 1986). Very recently this Court affirmed the judgment of the appeals court in the causes of appellant's co-defendants. *Webb and Busby v. State,* 763 S.W.2d 773 (delivered January 11, 1989). We granted appellant's petition to review his second ground for review wherein he contends the Court of Appeals erred in overruling his ground of error complaining of the trial court's action in prohibiting a defense witness from testifying. We will reverse the judgment of the court below.

This case concerns the robbery and murder of a young Dallas man who was employed as the manager of an Exxon self-service gasoline station located on the corner of Lancaster and Kriest Streets in the Oak Cliff subdivision. At trial, several wit-

nesses whose testimony has particular significance to the issue before us testified. Carl Jennings was a friend of Tommy Pettit, the deceased. Jennings visited with Pettit on the night of the robbery and murder, inside the small, two room manager's office at the station. He testified that between 3 and 4 a.m. on the morning of April 27, 1985, a friend of the deceased named "John" who worked at a nearby paint and body shop came by the station and asked to be admitted to the locked office. After talking with the deceased for about twenty minutes, "John" left to "make a run", saying he would return. Jennings told the jury that "John", whom he identified as appellant, returned a short time later and parked his car in front of the station near some phone booths. Again, the deceased opened the office door for appellant. Jennings noticed another man who circled the glass-enclosed office and stopped just outside the locked door. According to Jennings, appellant then stood up, pulled a gun out of his pants, pointed the weapon at the deceased and told him to open the door.

When Pettit opened the door, two men rushed inside and pushed Pettit and Jennings into the adjoining storeroom of the office building where they were told to lie on the floor face down. One of the two men, whom Jennings identified as Clinton Webb took appellant's gun. He and another man began to beat Pettit, causing him to cry out for help. Jennings was afraid to move and could only listen to the assault. He heard Pettit protest that he had no means to open the office time-safe, and further heard appellant's brother tell the others that he and Pettit would have to be killed because they could identify the robbers. Jennings looked up and the last thing he remembered seeing was Clinton Webb raise and point the gun at him. Later, when he regained consciousness, Jennings discovered he had been shot in the head and that Pettit lay dead with a similar wound. It was on the basis of Jennings' identification and description of appellant that the latter was arrested after reporting to his parole officer. According to police

witnesses, appellant then signed two separate confessions in the following days.

Appellant testified in his own defense. He said he had picked up Raymond Eugene, a.k.a. "Leon" Watkins on the night in question and had driven Watkins to the Exxon station. Appellant had taken Watkins to the station several times before at his request. Each time, appellant was told Watkins could get money from the manager, Pettit. Appellant said it was through Watkins that he had met Pettit. On the night of the robbery and murder, Tommy Pettit refused them entry to the manager's office, so appellant and Watkins "made a run" to a bootlegger's establishment and then spent some time shooting dice at a gambling house.

According to appellant, Leon lost all his money shooting dice and suggested they return to the station so he could get more cash. When Pettit let them in the side door this time, appellant saw Carl Jennings was also sitting in the office. According to appellant, both Jennings and Pettit were Leon's homosexual lovers. While Leon and Pettit went into the back room, appellant and Jennings sat in the glass-enclosed office. Appellant said Jennings offered him the opportunity to make some money which he refused. He then decided to leave. As he stood up, two unidentified men walked up to the cashier's window and after talking with Jennings were invited to come inside. Appellant said he left the office as the two men entered. Appellant drove home, was admitted to the house by his brother Clinton, and slept until morning. After he was arrested, appellant testified, he was taken to the police station and "forced" into signing two statements over a period of several days, though he could not read even the simplest words and could only write his name. In both confessions appellant incriminated himself in the robbery but de-emphasized his own role in the incident. The only real distinction between the confessions is that in the May 2, 1985 version, appellant blamed "Leon" rather than Clinton for planning and execution of the robbery.

Leon Watkins testified for the State at the rebuttal stage of trial. Watkins was charged with the same crime as appellant and his co-defendants but had a separate trial setting. He testified appellant had planned the robbery and his own small part in the crime was to sit at the cash window and "act like the manager." Watkins told the jury he did not know the manager of the Exxon station by name, did not know either Tommy Pettit or Carl Jennings, and denied ever receiving money from either individual. He stated that he had never "asked" appellant to give him a ride to the station or to Jennings' apartment, but admitted driving with appellant to the station on one occasion other than the night of the murder.

In an effort to rebut Watkins' testimony, the defense called Elaine Adams to the stand. Adams identified herself as an "acquaintance" of appellant. The State objected to her testimony on the grounds that she had been in violation of the sequestration rule by her presence in the courtroom. A sub rosa hearing was subsequently held.

At the hearing, Adams testified she had been present in the courtroom since "eleven-something" that morning and had heard the testimony of the police officers and Watkins, as well as a portion of appellant's testimony. Solely on the basis that the "rule" had been invoked and violated, the trial court sustained the State's objection and refused to allow Adams to testify before the jury. In a bill of exception later taken by the defense, Adams testified she had known appellant for years and Watkins since April; was present in the car with appellant and Watkins at least three times when the latter would ask to be taken to the Exxon station "to get some money"; and was present with appellant inside the car while Watkins spent ten or fifteen minutes inside the station before returning to the car with money. In addition, Adams testified Watkins knew both Pettit and Jennings by name, and she and appellant drove Watkins to Jennings' apartment on

at least one occasion. She did not know why Watkins received money on their trips to the station, but speculated it was for sexual services.

In his sole ground for review granted by this Court, appellant complains the trial court abused its discretion in disqualifying Adams as a witness under the "rule." *See* Arts. 36.03–36.06, V.A.C.C.P.[1] We granted review to determine whether the issue was decided adversely to appellant in conflict with applicable decisions by this Court and agree that the question presented, as it impacts upon the right of a criminal defendant to present witnesses in his defense, is an important question of both state and federal law which should be clearly settled by this Court. *See* Tex.R.App.P. 200(c)(2) and (3).

■ The purpose of placing witnesses in a proceeding under the sequestration rule, as stated in *Cook v. State,* 30 Tex.App. 607, 18 S.W. 412 (1892), is to "prevent the testimony of one witness from influencing the testimony of another" *Id., see also Archer v. State,* 703 S.W.2d 664 (Tex.Cr.App.1986); *Hougham v. State,* 659 S.W.2d 410 (Tex.Cr.App.1983) (Clinton, J. concurring), by one witness either overhearing the testimony of another witness or talking to that witness regarding his testimony. As retired Presiding Judge John Onion explained in *Carlile v. State,* 451 S.W.2d 511 (Tex.Cr.App. 1970), the jurisprudential roots of the rule may be traced to the Biblical story of Susanna and is a concept integrally related to the notion that both parties to an adversarial proceeding are entitled to a fair hearing in the interests of justice.

■ Issues concerning this evidentiary rule arise in two basic contexts: (1) where a party complains of the *admission* into evidence of certain testimony due to violation of the invoked rule by an adverse witness; and (2) the more rare case where the complaint is founded upon the party's *own* witness being excluded due to viola-

1. *Now see* TEX.R.CRIM.EVID. 613, effective September 1, 1986. The new evidentiary rule, repealing Arts. 36.03 and 36.04, V.A.C.C.P., provides the same safeguards as the old Code provi- sions which allowed for invocation of the rule to sequester witnesses and exceptions to the rule; and stated that enforcement of the rule would be at the discretion of the trial court.

tion of the rule. In the former situation we have said that a violation of the rule is not in itself reversible error, but only becomes so where the objected-to testimony is admitted and the complaining party is harmed thereby. *Guerra v. State* (No. 69,081, delivered May 4, 1988) (not yet reported); *Archer,* supra; *Hougham,* supra. In turn, injury or prejudice to the party in a criminal trial is dependent upon a showing of two criteria: (a) did the witness actually confer with or hear the testimony of the other witness; and (b) did the witness's testimony contradict the testimony of a witness from the opposing side or corroborate the testimony of another witness he had conferred with or had otherwise actually heard. *Guerra,* supra, citing *Hougham,* supra, (concurring opinion); *and expanding test in Hass v. State,* 498 S.W.2d 206 (Tex. Cr.App.1973). *See also Archer,* supra; *Beecham v. State,* 580 S.W.2d 588 (Tex. Cr.App.1979); *Cooper v. State,* 578 S.W.2d 401 (Tex.Cr.App.1979); *Campbell v. State,* 525 S.W.2d 4 (Tex.Cr.App.1975); *Crawford v. State,* 165 Tex.Cr.R.147, 305 S.W.2d 362 (1957); *Perry v. State,* 160 Tex.Cr.R. 8, 266 S.W.2d 171 (1954); *Wilson v. State,* 158 Tex.Cr.R. 334, 255 S.W.2d 520 (1953). Analysis of applicable decisions of this Court reflects that witnesses, usually those called by the State, who are technically disqualified but allowed to testify in the discretion of the trial court fall into two main categories: witnesses who have been sworn or listed as witnesses in the case and either hear facts or discuss another's testimony; and persons who were not intended to be witnesses and who are not connected with the case-in-chief but who have, due to events during trial, become necessary witnesses. *Guerra,* supra, slip op. at 39, cit-

*ing Green v. State,* 682 S.W.2d 271 (Tex. Cr.App.1984). This Court has usually held there to be no abuse of discretion in allowing the witness to testify. *Id. Accord Archer,* supra; *Hougham,* supra; *Cooper,* supra.[2]

In the second type of case involving the rule, the focus is on testimony excluded by the trial court. In the case at bar, the issue revolves around the disqualification of a witness called by the defense. In such a case, state statutory law is juxtaposed with a criminal defendant's constitutional right to the compulsory attendance of witnesses. *See* Tex. Const. art. I, §§ 10, 19, and U.S. Const. amend. VI. *See also* Art. 1.05, V.A.C.C.P. The right of an accused under the Sixth Amendment to call witnesses on his behalf and to compel their attendance, if necessary, is applicable to the states through the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Braswell v. Wainwright,* 463 F.2d 1148 (5th Cir.1972). At the same time, the right is not absolute. *Weaver v. State,* 657 S.W.2d 148 (Tex.Cr. App.1983). Under certain circumstances the exercise of sound discretion by the trial court will not act to violate the constitutional rights of an accused. *Id.*

The tension between the constitutional right of an accused to call witnesses in his own behalf and the necessary authority of the trial court to exercise discretion in the admission of testimony at trial was recognized by the United States Supreme Court almost one hundred years ago in the case of *Holder v. United States,* 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893). The *Holder* Court recognized the problem of a witness who has violated the rule may be resolved

2. As noted *ante,* the Court in *Guerra,* supra, expanded the second prong of the *Hass* test. In reviewing the act of a trial court in *allowing* an otherwise disqualified witness to testify, therefore, a reviewing court will determine whether the witness was (1) connected to the State or defense case-in-chief, and (2) whether the witness had any personal knowledge regarding the offense. If the witness is one who had no connection to the party proffering the testimony and was not likely to be called as a witness because of a lack of personal knowledge of the offense, no abuse of discretion will be shown in

allowing the witness to testify. On the other hand, where a nexus is shown in that the witness had personal knowledge of the offense and the proffering party clearly anticipated calling the witness to testify, the *Guerra–Archer–Haas* test will be applied. As noted *infra,* the expanded test in *Guerra,* supra, is logically consistent with review of a case where the trial court has *allowed* a witness to testify. It does not, however, address the problem in this case where a witness is *not allowed* to take the stand. To that extent, *Guerra,* supra, is distinguished.

by measure less severe than disqualification, but found the trial court could exercise authority to exclude testimony within narrow parameters:

If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under *particular circumstances* may be supported as within the sound discretion of the trial court. (emphasis supplied)

150 U.S. at 92, 14 S.Ct. at 10, 37 L.Ed. at 1010. Thus, an accused has the right to call and have his witness testify, albeit that witness's credibility may be properly challenged due to his violation of the rule, subject only to the exercise of sound discretion by the trial court to exclude the testimony based upon the particular circumstances in the case.

The question of what "particular circumstances" may serve to support exclusion of a witness is broad only in the abstract factual context of a case. The Seventh and Ninth Circuit Courts of Appeal have held that a witness should be disqualified only when he has violated the sequester order with the consent, connivance, procurement or knowledge of a defendant or his counsel. *United States v. Schaefer,* 299 F.2d 625 (7th Cir.), *cert. denied,* 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962); *United States v. Torbert,* 496 F.2d 154 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974). The Seventh Circuit's holding was partly based upon the reasoning that the decision to disqualify would impact upon the accused rather than the witness: "Sequestration of witnesses is a great aid in eliciting the truth, but disqualification of the offending witness absent particular circumstances is too harsh a penalty on the innocent litigant." *Id.*

As appellant points out in his brief, the Fifth Circuit Court of Appeals has also spoken out on the subject at bar. In *Braswell v. Wainwright,* supra, the record reflected that the sole corroborating witness for the accused was disqualified after violating the sequestration order, which had been invoked by defense counsel. It appears that the witness had been present in the courtroom since the preceding day and admitted hearing the testimony of certain State witnesses. Relying on persuasive authority including that provided by the *Holder* and *Schaefer* courts, the federal panel found that both Braswell's Sixth Amendment right of compulsory process and his right to a fair trial under the Due Process Clause had been violated. As to the sixth amendment claim, even though the defense was the invoking party, it was "undisputed that (the disqualified witness) violated it without the knowledge, procurement, or consent of Braswell or his counsel." In explanation of the ruling, the court pointed out:

... we do not invalidate state use of the rule, nor do we prescribe a particular procedure a state trial court must follow in determining whether exclusion is proper. Upon the circumstances of each case the trial judge must weigh the exclusion of the witness against the defendant's right to obtain witnesses in his behalf. Where the defendant has been advised of his constitutional right and there has been a knowing intelligent waiver by the defendant, exclusion would be permissible. And perhaps the consent, procurement, or knowledge on the part of defendant or his counsel might rise to the level of a waiver and thus render exclusion proper. But here there was no express waiver and no particular circumstances which would justify exclusion.

463 F.2d at 1154–55.

Speaking to Braswell's due process claim, the court later stated:

Closely related to Braswell's sixth amendment right is his right to a fair trial—to due process. Braswell had a right to at least present the testimony of his sole corroborating witness to the jury. That the jury might still have returned a guilty verdict is beside the point; judgment of the credibility of witnesses is for the trier of fact. The trial court arbitrarily excluded (the witness) upon no other basis than that he violated

the rule. Such discretion cannot be permitted when it denies a defendant a fundamental constitutional right. Under the particular and extraordinary circumstances of this case the exclusion of (the witness) destroyed the fundamental fairness essential to due process in the conduct of a criminal trial.

*Id.* at 1155–56 (citations omitted).

In addition to the federal courts, a number of states have also held that disqualification of a defense witness is not an appropriate remedy for an inadvertent violation of a witness exclusion order. Absent a showing that violation of the order is due to the consent, connivance, procurement or knowledge of the defendant or his counsel, a trial judge should not deprive an accused of his right to present testimony. *State v. Burke*, 522 A.2d 725 (R.I.1987); *State v. Warren*, 437 So.2d 836 (La.1983); *State v. Burdge*, 295 Or. 1, 664 P.2d 1076 (1983); *Commonwealth v. Scott*, 496 Pa. 78, 436 A.2d 161 (1981). *See also State v. Leong*, 51 Hawaii 581, 465 P.2d 560 (1970), citing *People v. Duane*, 21 Cal.2d 71, 130 P.2d 123 (1942); *State v. Carney*, 216 Kan. 704, 533 P.2d 1268 (1975); *State v. Boutte*, 384 So.2d 773 (La.1980). *Cf. Rowan v. State*, 431 N.E.2d 805 (Ind.1982) and *Blanchard v. State*, 247 Ga. 415, 276 S.E.2d 593 (1981). *See generally* Annot. 14 A.L.R.3d 16, § 6(c) at 54–56.

■ Moreover, while appellant is essentially correct in his assertion that this Court has not previously articulated a formal standard for appellate review of a trial court's exercise of discretion in disqualifying a defense witness found to be in violation of the rule, a review of caselaw on the issue reflects that in the comparatively rare case where a defense witness has been disqualified and the issue has been preserved on appeal, this Court has informally utilized the same or similar process as that found in the federal and foreign decisions cited *ante*. Simply put, we have looked at the *reason* for the witness's presence in the courtroom and at the "crucial" nature of the excluded testimony to the defendant's case.

In *Clayton v. State*, 78 Tex.Cr.R. 158, 180 S.W. 1089 (1915), the defendant was convicted of perjury. The State's case rested upon the testimony of one witness who testified he was present in a certain room where Clayton and several others were gambling. After the State rested its case-in-chief, Clayton called to the stand three witnesses in his behalf who had heard the evidence put on by the State in violation of the rule. All three were disqualified for violating the rule. The proposed testimony would have corroborated Clayton's claim that the State's witness was not in the room, and would have contradicted the State witness's assertion that he was present at the time the crime was allegedly committed. On appeal, Clayton's conviction was reversed. Judge Harper, writing for the Court, stated:

Ordinarily we will not disturb the action of the court in excluding testimony where the rule has been invoked. It is a matter confided to the trial court's sound discretion. But in a case like this, where the person on trial has been deprived of all his witnesses (except one) on the material issues in the case, and it is made to appear that they would testify to these material facts, three of them being in attendance on court, and through no fault of appellant he has been deprived of their testimony, we are inclined to think the court erred in not granting him a new trial.

180 S.W. at 1092.

In *Hernandez v. State*, 79 Tex.Cr.R. 182, 183 S.W. 440 (Tex.Cr.App.1916), the defense attempted to call a witness who would testify to a history of antagonistic feelings between the complaining witness and the defendant, the purpose being to show bias and motive of the complaining witness to testify. The State's objection to the witness on the basis that he had been in the courtroom and heard the other witness's testimony was sustained and the defense witness was disqualified. Judge Davidson, writing for the Court, reversed the judgment, stating in part:

It has been held by all the authorities evidence that goes to the bias, ill feeling, ill will, and motive of a witness is not

impeaching, but original testimony, and of a material character. The fact that a witness was in the courtroom may make no difference, if his testimony is of a material character in the due administration of justice.... Defendant explains that he did not know the witness was in the courtroom; that he had not had him summoned, and did not know this was a material question in the case; but as soon as he discovered the presence of the witness he sought to elicit the testimony.

183 S.W. at 441.

Although neither opinion directly cites a constitutional provision, it is apparent from a reading of these two decisions that the Court has long been aware of the underlying principles and has ruled accordingly. *See also Crosslin v. State,* 90 Tex.Cr.R. 467, 235 S.W. 905 (1921) (record did not reflect appellant failed to anticipate disqualified witness might know facts material to defense so that failure to sequester witness could be fairly ascribed to laches or improper design). *See generally Downs v. State,* 132 Tex.Cr.R. 328, 104 S.W.2d 503 (1937) (Lattimore, J., dissenting).

Later cases demonstrate that the Court's method in reviewing an issue involving disqualification of a defense witness under the sequestration rule has continued without basic change, even without written "guidelines" as requested by both parties to this appeal. In *Nixon v. State,* 309 S.W.2d 454 (Tex.Cr.App.1958), the defendant was charged with the premeditated murder of his wife. The defendant admitted to the shooting, but contended he was temporarily insane at the time of the incident. To this end, he subpoenaed an attorney who had been in and out of the courtroom during trial and had not been placed under the rule. The State's objection to the witness on the basis of the rule was sustained, and Nixon appealed. We reversed the judgment, stating:

We are constrained to agree that in refusing to permit the testimony the trial court abused his discretion and the due administration of justice cannot be preserved and maintained by sustaining the trial court's ruling, especially in view of the fact that the extreme penalty of death was assessed.

309 S.W.2d at 456 (citations omitted).

In two other cases, *Marshburn v. State,* 491 S.W.2d 663 (Tex.Cr.App.1973) and *O'Dell v. State,* 467 S.W.2d 444 (Tex.Cr. App.1971), the latter opinion cited by the Court of Appeals as authority for their holding below, we held there was no abuse of discretion in disqualifying the defense witnesses. In *Marshburn,* supra, we recognized the holding in *Braswell v. Wainwright* and in *Holder v. United States,* both supra, but found that "[a]ppellant has made no effort to show this Court what the testimony of the two witnesses would have been had they been permitted to testify." Thus, we were "unable to apply" those decisions to the facts of the case then before us. On rehearing, we re-examined the record but were "unable to see how these two witnesses who were not permitted to testify could have supplied the 'crucial' testimony in appellant's behalf pointed out in Braswell, supra. Appellant's brief does not point out the significance of their testimony." 491 S.W.2d at 667. *Cf. Nixon v. State,* 309 S.W.2d 454. 491 S.W.2d at 667.

Again in *O'Dell,* supra, the record showed a defense witness had been sitting in the courtroom and heard testimony from an accomplice witness testifying for the State. We held there was no abuse of discretion in refusing to allow the defendant's brother to take the stand and testify to an alleged conversation between the brother and the accomplice witness. Without analysis, but with reference to that appellant's failure to present a cognizable claim for appellate review, we found the trial ruling to be "a matter within the discretion of the trial court, and appellant cites no authority that such refusal was an abuse of discretion." Here, appellant has preserved the issue for review by trial objection and bill of exception, and has provided a modicum of supporting authority for his position.

Review of decisions of this Court and other jurisdictions reflects both a similar approach and recognition of the basis for the sequestration rule as applied to a

defense witness, and the rationale behind balancing a defendant's constitutional right of compulsory process against the State's entitlement to a fair procedure. From the above decisions, a working definition of "particular circumstances" may be gleaned and fashioned for use as a test to determine whether a trial court has abused its discretion in disqualifying a defense witness found to be in violation of the rule. Where the "particular and extraordinary circumstances" show neither the defendant nor his counsel have consented, procured, connived or have knowledge of a witness or potential witness who is in violation of the sequestration rule, and the testimony of the witness is crucial to the defense, it is an abuse of discretion exercised by the trial court to disqualify the witness.

Application of the standard must necessarily be on a case-by-case basis, weighing or balancing the interests of both the State and the accused in a fair proceeding. *See Holder v. United States,* supra. Thus, in the exercise of sound judicial discretion a court must consider alternatives available to it and then choose among them. Other sanctions, such as a cautionary instruction or a contempt proceeding, are less pervasive options where an order has been violated. The trial court must consider both the benefit and detriment flowing from the order of disqualification. A detriment of disqualification will always be the loss to the accused of the proffered testimony; evaluating this loss will require considering the relative strength of the testimony, the importance or "crucial" nature of the issue upon which it is offered, and the extent to which it is cumulative of other evidence in the case. In contrast, the benefits of disqualification include avoiding the risk that the party proffering the testimony either intentionally or negligently violated the rule through the actions of accused, counsel or witness; or that the witness's testimony will be tainted by exposure to other testimony or discussion.

This is not to say that the test is exclusive; other "particular or extraordinary circumstances" may well exist, given the facts of each case. However, the rationale for the test remains constant: given the constitutional rights of an accused, disqualification of an offending witness absent particular and articulable circumstances is too harsh a penalty to impose upon a defendant who is without a verdict and chooses to exercise his right to call witnesses in his behalf. With that in mind, we turn our attention to the case at bar.

The record in the instant case reflects a similar factual scenario to that found in *O'Dell,* supra, in that appellant sought to rebut an accomplice's testimony and impeach his motive for testifying. Specifically, Adams would have testified "Leon" requested appellant to drive him to the Exxon station to "get money" on several different occasions while she was in the car; Watkins would spend some time inside the station before returning to the car with money on each occasion; he knew both the deceased and Jennings; and appellant drove Watkins to Jennings' apartment on at least one occasion. As noted *ante,* these facts were elicited from Adams and preserved on appeal by bill of exception. In contrast to *O'Dell,* supra, here appellant not only developed specific testimony for the record, but also provided this Court and the appeals court below with authority to support his position. The import of *O'Dell,* supra, lies not in a bright-line rule regarding discretion to prevent a witness disqualified under the rule from rebutting testimony of an accomplice witness; rather, the issue in that case was not properly preserved and presented for our review.

Here, in contrast, appellant has met his initial burden of providing an adequate appellate record to be weighed in consideration of the trial court ruling. It remains to determine whether the record reflects the ruling made by the trial court was an abuse of discretion. To make this determination, we believe the test set out in *Holder v. United States* and *Braswell v. Wainwright,* both supra, presently utilized by a number of foreign jurisdictions and informally adopted by this Court, is a fair test for appellate review of a trial court's ruling to disqualify a defense witness after the sequestration rule has been invoked. We will formally adopt that standard in the

following manner. A reviewing court will determine: (1) if the rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense. In applying the test to the facts of this case, we are guided by balancing the benefit of upholding the ruling against the detriment or cost to appellant arising from that ruling, with particular concern as to the circumstances surrounding the trial court's decision to disqualify the witness.

It is uncontradicted that the rule had been invoked. The rule having been invoked for the trial, it was incumbent upon appellant, defense counsel, and the prosecution to see to it that prospective witnesses remained sequestered, except for those witnesses traditionally exempted from the rule. *See Lewis v. State*, 486 S.W.2d 104 (Tex.Cr.App.1972); *Carlile v. State*, 451 S.W.2d 511 (Tex.Cr.App.1970) and cases cited therein. There is also no question that prospective witness Adams had been in the courtroom and had heard testimony from appellant, Watkins and police officers over a period of almost six hours. However, there is nothing in the record which tends to show appellant or his counsel knew of her presence and the possibility her testimony would be relevant to the case until after Watkins testified. After Watkins left the stand, a recess was called and it was at that time appellant saw Adams in the courtroom and told counsel to speak with her. Both Adams and defense counsel stated their meeting in the hallway outside the courtroom was the first time they had seen one another. Moreover, in response to questioning by the trial judge, Adams repeatedly stated she had never talked with appellant about the trial or Watkins' possible testimony, although she had visited appellant several times in jail. Furthermore, during the development of appellant's bill of exception on the matter, Adams stated

her recollection of the facts to which she was prepared to testify was her own and was not affected by any other witness's testimony heard in the courtroom. Finally, even though there was strenuous cross-examination by the State, as well as questions from the bench, which would tend to illuminate improper motive, if any, the court's ruling on the State's motion to disqualify was made solely on the basis of Adams' presence in the courtroom. Examination of the record shows no particular circumstance tending to show improper conduct on the part of appellant, Adams or counsel excepting the technical violation of the rule. As for the violation itself, there is no indication in the record that the trial court considered alternative sanctions or balanced the prejudice to appellant from excluding the testimony against the prejudice to the State for allowing it.

Having met the first prong of the test, appellant must nevertheless show the excluded testimony was "extraordinary" in the sense it was *crucial* to his defense. The Court of Appeals concluded that at best Adams' testimony merely went to impeach the accomplice witness Watkins, and that an accomplice witness's testimony must be corroborated by other evidence connecting a defendant to the crime. *See Marlo v. State*, 720 S.W.2d 496 (Tex.Cr.App.1986); *Killough v. State*, 718 S.W.2d 708 (Tex.Cr.App.1986); *Cruz v. State*, 690 S.W.2d 246 (Tex.Cr.App.1985). While the conclusion may be correct in part, we must disagree with the premise upon which it is based. Our examination of Adams' testimony as reflected in the bill of exception shows her testimony was probative not only on the issue of Watkins' credibility, but also on the defensive theory of the case. She was the only witness who could corroborate appellant's claim of Watkins' involvement with the deceased and Carl Jennings at the service station and at Jennings' apartment. During final argument, counsel advanced the theory that Jennings had lied in order to cover for his homosexual lover, Watkins. The jury was reminded that Jennings, the only eyewitness to the incident, testified he did not see Watkins during the robbery, even though Watkins testified he saw but did not recognize Jen-

nings during the same period of time. Therefore, Adams' testimony related to both Watkins' and Jennings' motives for testifying in the manner they did. The excluded testimony was therefore strong in the sense that Adams directly corroborated important parts of appellant's testimony relating to motive and bias of the State's chief witnesses. It was important evidence because of the content and the fact that appellant had no other witness who could testify to those particular matters. Thus, we cannot say the excluded testimony was merely cumulative or of questionable importance; it was "crucial" in the matter of the defensive theory developed during trial.

Given the nature of the excluded testimony and the fact that Adams' testimony would have been the sole corroborating evidence going to show possible motive and bias on the part of the State's chief witnesses, we are constrained to hold her testimony to be crucial to the defense. Appellant having met his burden of proof regarding both prongs of the test adopted today, we must conclude the trial court abused its discretion in disqualifying the witness, thereby denying appellant his federal and state constitutional right to call witnesses in his behalf, and his due process right to a fair trial. *See* U.S. Const. arts. Vi, VIV, and Tex. Const. art. I, all supra. *See also Holder v. United States,* supra; *Braswell v. Wainwright,* supra; *Nixon,* supra. Injury or prejudice having been shown, *cf. Beecham v. State,* 580 S.W.2d 588 (Tex.Cr. App.1979); *Allen v. State,* 536 S.W.2d 364 (Tex.Cr.App.1976), we cannot say the error was harmless beyond a reasonable doubt. Tex.R.App.P. 81(b)(2).

The judgment of the Court of Appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

McCORMICK, P.J., concurs in the result.

WHITE and BERCHELMANN, JJ., dissent.