**AFFIRMED; Opinion Filed February 11, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01111-CR

**DAMIAN ELDER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F12-53551-K**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Evans

After a jury trial, Damien Elder appeals from his conviction of aggravated assault with a deadly weapon. In two issues, appellant generally asserts that the trial court erred by excluding testimony of a defense witness at trial and denying his motion for new trial. In two additional issues, he challenges the sufficiency of the evidence to support his conviction. For the reasons that follow, we affirm the trial court's judgment.

### BACKGROUND

The events leading up to appellant's arrest began on the evening of St. Patrick's Day 2012. That night, Daniel Sims valet parked her 2003 Mitsubishi Galant to have dinner with friends at a restaurant on Greenville Avenue. After dinner, she attempted to retrieve her vehicle, but the valet could not locate her keys. Sims's car could be seen in the lot where it was parked. As an accommodation, Jesus Vilchez, who was working for the valet operator, offered to drive

Sims and her companions in his vehicle to a concert they planned to attend. Shortly after Vilchez dropped off the group at the concert venue, Sims called Vilchez to pick them up because they had missed the band they wanted to see. Vilchez drove Sims's friends back to their hotel. Sims asked Vilchez to take her back to the restaurant.

At about 11:30 p.m. or midnight, as Sims and Vilchez headed to the restaurant, Vilchez received a call from the valet manger indicating that Sims's car had just been driven off the parking lot. Vilchez turned his vehicle from U.S. 75 onto Mockingbird Lane heading towards Greenville Avenue and started looking for Sims's car. He spotted her car stopped at a red light in the left turn lane on McMillan at its T-intersection with Mockingbird Lane. There was one vehicle in front of Sims's vehicle in the left turn lane. Vilchez stopped his vehicle on Mockingbird Lane in front of the intersection, and both Vilchez and Sims exited his vehicle and approached Sims's car. According to Sims, as the driver moved her car from the left turn lane to the right turn lane, the driver's side fender struck Sims causing her to fall to the ground and sustain injuries. Sims and Vilchez then returned to Vilchez's vehicle and continued to follow Sims's car until the driver, later identified as appellant, got out of the car and started running. At that point, Vilchez ran after and eventually caught appellant. Vilchez brought appellant back to the vehicles where he was then arrested by the police. Appellant was charged with aggravated robbery. After a trial, however, the jury found appellant guilty of the lesser-included offense of aggravated assault. The trial court sentenced appellant to forty years' imprisonment. This appeal followed.

## ANALYSIS

In his second and third issues, appellant contends the evidence is insufficient to show he used the vehicle as a deadly weapon or caused bodily injury to Sims.[1]  In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894–95 (Tex. Crim. App. 2011).

To obtain a conviction for aggravated assault with a deadly weapon, the State was required to prove beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly caused Sims bodily injury and that appellant used or exhibited a deadly weapon during the commission of the assault.  *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (West 2011 and West Supp. 2014).  A "deadly weapon" is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.  *See id*. § 1.07(a)(17)(B).  To sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a deadly weapon; (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained; and (3) that other people were put in actual danger.  *See id.*; *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).  Proof that a defendant possessed a specific intent to use a motor vehicle as a deadly weapon is not required.  *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).  Rather, it is the manner in which the vehicle was used considering the surrounding circumstances that dictate whether the vehicle is "capable" of causing death or serious bodily injury.  *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).

---

[1] In his brief, appellant combines his argument for issues two and three.  We likewise address these issues together.

There was evidence that appellant's use of the vehicle could cause serious bodily injury or death. Sims testified that she was standing beside the car in front of appellant's vehicle when he drove towards her, hit her, and then continued driving. She further testified that she was struck by the driver's side fender causing her head to hit the windshield. According to Sims, when she fell off the car, she hit the back of her head on the street and was about a foot or two away from the car's tires. She stated her body's impact with the vehicle caused dents in the fender and hood, broke the driver's side mirror, cracked the windshield, and damaged the driver's side window. Additionally, Sims testified that as a result of being hit, she sustained, among other things, a first-degree dislocation of her right AC joint, as well as bruises and scrapes. Based on the evidence before it, a rational jury could have found appellant acted with the requisite culpable intent for aggravated assault and that his use of the vehicle was capable of causing death or serious bodily injury such that it constituted a deadly weapon. We resolve appellant's second and third issues against him.

In his first issue, appellant contends the trial court erred in excluding the testimony of defense witness Luis Pantoja for violating the witness sequestration rule (the Rule).[2] Pursuant to appellant's request, the trial court officially invoked the Rule before appellant was arraigned. At that time, no witnesses were in the courtroom. The trial proceeded.

The defense called Pantoja as its final witness. Pantoja testified that he witnessed the events at the Mockingbird Lane/McMillan intersection from the backseat of another vehicle. He indicated a man and a woman jumped out of a white SUV and approached the vehicle appellant was driving and tried to open the car door. According to Pantoja, appellant was "panicking somewhat" "because he just got caught . . . taking the vehicle." As appellant put the car in reverse to change lanes, the woman was in front of the car. "So when [appellant] starts moving –

---

[2] *See* TEX. R. EVID. 614 (providing for the exclusion of witnesses from court during other witnesses' testimony).

–4–

and I asked myself over and over, why did this lady jump on the hood of the car? I just finished finding out that she's the owner of the car. Right now, outside in the hall, when I walked in not five minutes ago." The State objected to Pantoja's testimony and after a sidebar discussion, the trial court instructed the jury to disregard Pantoja's testimony. The trial court then held a hearing outside the presence of the jury where the judge determined that Pantoja violated the Rule by talking to appellant's father in the hall before testifying and disqualified Pantoja as a witness.

The judge granted defense counsel's request to permit Pantoja to finish his testimony outside the presence of the jury as an offer of proof. Pantoja indicated that he, appellant, and Tyler, another friend, were celebrating St. Patrick's Day at several establishments on Greenville Avenue, including a pizzeria near the restaurant where Sims had dinner. When they left the pizzeria, the group initially entered Tyler's vehicle, but appellant suddenly left the car. Pantoja, sitting in the back seat of Tyler's vehicle, then saw appellant drive by in another vehicle later identified as belonging to Sims. Tyler followed appellant and was behind appellant's vehicle when it stopped for the light at the intersection of Mockingbird Lane and McMillan. Pantoja was questioned about whether he saw the keys for the vehicle. In response, Pantoja noted that when he went to the pizzeria, appellant and Tyler went "to the car." When appellant and Tyler came back to the pizzeria, "all of a sudden there were some keys."

During Pantoja's testimony, the trial court also confirmed that Pantoja learned that appellant was driving Sims's vehicle from speaking with appellant's dad shortly before Pantoja testified. At the conclusion of the offer of proof, the trial court denied defense counsel's request that Pantoja be allowed to testify in front of the jury. Pursuant to the State's request, the trial court instructed the jury to disregard the entirety of Pantoja's testimony.

When there is a violation of the Rule, the trial court, after taking all circumstances into consideration, may allow the witness to testify, exclude the testimony, or hold the violator in

contempt. *See Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). When a trial court excludes the testimony of a defense witness for violating the Rule, however, "state statutory law is juxtaposed with a criminal defendant's constitutional right to the compulsory attendance of witnesses." *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989). Where the particular circumstances demonstrate neither defense counsel nor the defendant consented, procured, connived, or had knowledge of the witness's violation of the rule and the witness's testimony is crucial to the defense, the trial court abuses its discretion in disqualifying the witness. *Id*. at 244. Accordingly, we review the trial court's ruling to determine: (1) if the rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of violation, which would tend to show the defendant or his counsel consented, procured, or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense. *Id*. at 245.

Although Pantoja admitted to talking with appellant's father before he testified, there is nothing in the record that would tend to show that appellant or his counsel knew, consented to, or procured the communication which apparently occurred in the hallway outside the courtroom during trial. Accordingly, there are no particular circumstances before us that would justify exclusion of Pantoja. Having concluded that the first prong of the test has been met, we must next determine whether Pantoja's testimony was crucial to the defense.

Appellant contends the testimony was crucial because Pantoja was the sole defense witness and his testimony negated the State witnesses' testimony that appellant hit Sims with the vehicle or that he exhibited a deadly weapon. We do not agree. Even if the jury had been allowed to consider and chose to believe Pantoja's testimony that Sims jumped on the hood of the vehicle, his testimony did not negate any element for the offense of aggravated assault.

Indeed, even Pantoja's testimony indicated that rather than stop when Sims appeared on the hood, appellant proceeded to drive the car out of the lane. There was no evidence disputing that during appellant's movement of Sims's car, Sims hit the windshield and side mirror and then fell to the ground. Whether Sims ended up on the hood after being hit by appellant or Sims jumped onto the hood, the evidence was undisputed that appellant drove the vehicle in such a way to cause Sims to fall from the hood to the ground and Sims was injured by the movement of the vehicle that was driven by appellant. Because appellant has not established Pantoja's testimony was crucial to the defense, the trial court did not err in excluding his testimony for violating the Rule. We resolve appellant's first issue against him.

In his fourth issue, appellant argues that the trial court erred in denying his amended motion for new trial and in precluding certain testimony from appellant's father at the hearing on his motion for new trial.[3] Specifically, appellant contends that the trial court should have permitted appellant's father to testify about the alleged violation of the Rule which ultimately led to the exclusion of Pantoja's testimony. We have already concluded the trial court did not err in excluding Pantoja as witness because appellant failed to show his testimony was crucial to the defense. Accordingly, appellant cannot show how he was harmed by the denial of the first ground of his motion for new trial or the exclusion of testimony from appellant's father regarding his communication with Pantoja and the alleged violation of the Rule. We resolve appellant's fourth issue against him.

---

[3] Appellant specifically challenges the trial court's denial of the first ground in his amended motion for new trial. Ground one complained about the trial court's exclusion of Pantoja's testimony at the guilt-innocence phase of trial.

We affirm the trial court's judgment.

/ David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

131111F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAMIAN ELDER, Appellant

No. 05-13-01111-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F-1253551-K
Opinion delivered by Justice Evans, Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 11th day of February, 2015.