Opinion filed June 14, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed June 14, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00146-CR 

                                                    __________

 

                                 OSCAR PENA DELAPAZ, Appellant

                                                             V.

                                        STATE
OF TEXAS,
Appellee

 



 

                                          On
Appeal from the 32nd District Court

                                                          Nolan County,
Texas

                                                  Trial
Court Cause No. 10194-B 

 



 

                                                                   O
P I N I O N

 

The jury convicted Oscar Pena Delapaz of two
counts of aggravated sexual assault and one count of injury to a child and
assessed his punishment at seventy-five years confinement for each of the
aggravated sexual assault counts and twenty years confinement for the injury to
a child count. A $10,000 fine was assessed for each count.  We affirm.

                                                             I.  Background Facts








Angie Medina and Delapaz lived together and had
five children, including their seven-year-old daughter K.D.  One afternoon, Medina went shopping with her mother and
niece and left Delapaz with the children. 
When she returned home, the kids were playing outside, and Delapaz was
inside with the door locked.  He unlocked
the door for her and told her that K.D. was bleeding at her Amiddle spot.@  Delapaz had blood on his fingers, and K.D.
had bloodstained toilet paper in her vagina. 
Delapaz did not want Medina to take K.D.
to the hospital because he was concerned that CPS would become involved and
take their children away, but Medina
took K.D. to the Sweetwater hospital=s
emergency room anyway.  Medina called Delapaz from the hospital to
update him on K.D.=s
condition.  He then told her that K.D.
had complained that a black boy injured her. 
He also put K.D.=s
sister on the phone.  In the background,
Delapaz could be heard telling the child to say that K.D. injured herself when
she fell out of a tree.

Sweetwater law enforcement officials were
contacted.  They interviewed Medina at the
hospital.  She consented to a search of
her apartment.  There they found damp,
bloodstained clothing in the bathroom; bloodstains on the toilet seat; and
bloodstained toilet paper in a trash can. 
The police asked Delapaz to come to the police station for an
interview.  He complied and provided them
with a written statement in which he blamed K.D.=s
injuries on an unknown black boy.

Meanwhile, K.D. was transferred to Hendrick Medical Center
for further treatment.  She was diagnosed
with a second degree laceration that went approximately one inch into her
vagina and that required surgical intervention to repair.  Hospital personnel suspected sexual abuse,
and two days after her surgery, K.D. told a hospital social worker and a
hospital nurse that her father had injured her. 
Delapaz was subsequently arrested. 
He gave a second statement in jail. 
This time he claimed that he accidentally cut K.D. while bathing her.

                                                                       II.  Issues

Delapaz challenges his conviction with four
issues.  Delapaz argues that his rights
under the confrontation clause were violated, that portions of the victim=s medical records were inadmissible
hearsay, that the trial court abused its discretion by excluding a witness
pursuant to Tex. R. Evid. 614,
and that he received ineffective assistance of counsel.

                                                                     III.
Analysis

A. 
Confrontation Clause.








The State offered medical records from Hendrick Medical
Center and Rolling Plains
 Memorial Hospital
that were filed under affidavit.  Delapaz
objected, contending that the records included inadmissible hearsay and that
their admission violated his rights under the confrontation clause.[1]  Specifically, Delapaz objected to notes made
by Melissa Foss, a social worker employed by Hendrick Medical
 Center, and Casey Wasson,
a hospital nurse.  The challenged notes
reflect that Foss interviewed K.D. in her hospital room and asked her what
happened.  K.D. told Foss that her dad
had poked her with his Apee-pee@ and with his fingers.  Foss asked Wasson to come into K.D.=s room, and K.D. repeated her
accusation.  Foss and Wasson made
separate notes of their conversation with K.D. and included them in K.D.=s medical records.

The trial court sustained Delapaz=s objection in part.  The court allowed the State to introduce
records containing statements made by K.D. and the questions to which she
responded but ordered the State to redact any other third party statements.  Delapaz argues on appeal that the trial court
erred because the medical records contain K.D.=s
testimonial declarations but he was not allowed to cross-examine her or the
health-care professionals who interviewed her.[2]

We review Delapaz=s
constitutional issue de novo.  Davis
v. State, 169 S.W.3d 660, 665 (Tex. App.CAustin
2005), aff=d,
203 S.W.3d 845 (Tex. Crim. App. 2006). 
In Crawford v. Washington, 541 U.S. 36 (2004), the Court held
that the admission of testimonial hearsay violated the Sixth Amendment right to
confrontation unless the declarant was shown to be unavailable to testify and
the defendant had a prior opportunity to cross-examine the declarant.  The Supreme Court did not provide an
exclusive definition of testimonial statements but did hold that the
confrontation clause applies to witnesses who Abear
testimony,@ which,
it noted, is Atypically
>[a] solemn declaration or
affirmation made for the purpose of establishing or proving some fact.=@
541 U.S.
at 51.








Foss=s
and Wasson=s notes
arguably raise two potential confrontation clause questions:  Did K.D. really say what they wrote and, if
so, are her accusations accurate?  When
the notes are stripped of any personal observation or third party comment, they
remain evidence that K.D. implicated her dad to hospital staff but not evidence
that K.D.=s
accusations were true.  The jury was
tasked with determining whether K.D.=s
accusations were accurate B
not if the recorded conversations took place. 
K.D.=s
accusations were certainly relevant to the jury=s
determination.  However, their bare
repetition does not fall within the Supreme Court=s
definition of testimonial statement; therefore, Delapaz=s
inability to cross-examine Foss and Wasson did not violate his right of
confrontation.  Delapaz=s first issue is overruled.

B. 
Hearsay.

Delapaz next argues that the challenged notes were
inadmissible hearsay because there was no evidence that the statements were
made for the purpose of medical diagnosis, care, or treatment.  We review decisions to admit or exclude
evidence under an abuse-of-discretion standard. 
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  We will not reverse a ruling that lies within
Athe zone of reasonable disagreement.@ 
Id.  

Tex. R.
Evid. 803(4) provides an exception to the hearsay rule for A[s]tatements made for purposes of
medical diagnosis or treatment and describing medical history, or past or
present symptoms, pain, or sensations, or the inception or general character of
the cause or external source thereof insofar as reasonably pertinent to
diagnosis or treatment.@
This exception has been interpreted to include statements by suspected victims
of child abuse as to the source of their injuries. Burns v. State, 122
S.W.3d 434, 438 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d);
Gregory v. State, 56 S.W.3d 164, 183 (Tex. App.CHouston
[14th Dist.] 2001, pet. dism=d);
Beheler v. State, 3 S.W.3d 182, 189 (Tex. App.CFort
Worth 1999, pet. ref=d).


The medical treatment exception assumes that the
patient understands the importance of being truthful with health-care providers
so as to receive an accurate diagnosis and treatment.  Burns, 122 S.W.3d at 438.  The exception also assumes that, in child
abuse cases, the child=s
treatment includes being removed from the abusive setting; thus, the identity
of the abuser is pertinent to their medical treatment.  Fleming v. State, 819 S.W.2d 237, 247
(Tex. App.CAustin
1991, pet. ref=d).  Texas courts have adopted a two-part test for
determining whether the exception applies in a particular case: (1) the
declarant must make the statement for the purpose of receiving treatment and
(2) the content of the statement must be such as is reasonably relied upon by a
health-care professional in the declarant=s
treatment or diagnosis.  Jones v.
State, 92 S.W.3d 619, 623 (Tex. App.CAustin
2002, no pet.).








Delapaz argues that the trial court abused its
discretion because it had no evidence that K.D., who was seven years old at the
time, understood the need to give truthful answers or that she appreciated that
her statements were being made for the purpose of receiving medical care.  The State responds that the trial court had
circumstantial evidence of K.D.=s
motive to seek medical treatment because she was talking to nurses and a social
worker at the hospital and that the court could also consider the remainder of
K.D.=s medical
records.  We note that in our analysis we
may also consider the subsequent testimony of Pat Rollins, a sexual assault
nurse examiner for Hendrick Medical Center, and Dr. Michelle Johnson, a
gynecologist who treated K.D. at Hendrick, because evidence prematurely
admitted in error may become admissible or be rendered harmless by subsequent
evidence.  James v. State, 102
S.W.3d 162, 175 (Tex. App.CFort
Worth 2003, pet. ref=d).

The records, which were properly authenticated as
business records pursuant to Tex. R.
Evid. 803(6), establish that K.D.=s
statements were made while she was receiving medical treatment at the
hospital.  K.D. arrived at Hendrick
Medical Center at 7:25 p.m. on May 14, 2005. 
A progress note made that night shortly before K.D. was taken to surgery
at 9:55 p.m., as well as the surgeon=s
notes, indicated that the hospital obtained some history from K.D.=s mother but that K.D. herself was
quiet and nonverbal.  K.D. apparently
provided no historical information until the morning of May 16, when she made
the statements to Foss and Wasson implicating her father.

The hospital relied upon K.D.=s statements.  Dr. Paige H. Lemasters prepared K.D.=s discharge summary.  Dr. Lemasters wrote that the admission and
discharge diagnoses were perineal laceration, suspected sexual assault, and
anemia.  Dr Lemasters referred to K.D.=s statements to document the suspected
sexual assault diagnosis.  Dr. Lemasters
also noted that, when K.D. was discharged from the hospital, she was in the
care of her mother and a Sweetwater police officer and that they were to go
directly to the Child Advocacy Center.








After the medical records were admitted, the State
called Rollins and Dr. Johnson as witnesses. 
Rollins testified that they were initially unable to obtain a history
from K.D. because she had a life-threatening injury due to the amount of blood
loss and because the emergency room was not a kid-friendly environment.  They performed a physical exam and determined
that K.D. had suffered a vaginal injury similar to what would be found in a
woman who had just delivered a baby, 
that K.D.=s injury
was consistent with sexual assault, and that it required surgical intervention.  Dr. Johnson confirmed that K.D.=s injuries were consistent with sexual
assault and required surgery and that K.D. would not talk to hospital personnel
the night of her admission.

Delapaz is correct that the State offered no
express testimony that K.D. understood the need to be truthful when telling the
social worker and nurse what had happened, but we can find no authority for the
proposition that this specific testimony was necessary.  In Fleming, the court recognized that
the medical treatment exception assumes that the patient appreciates the need
to provide accurate information but that the logic behind this assumption may
break down when the victim is a young child. 
819 S.W.2d at 247.  The court
affirmed the admission of a four-year-old child=s
statement to a health-care provider based, at least in part, on the provider=s testimony that the child did not
appear confused or coached.  Id.  The court did not, however, expressly state
that the provider=s
testimony was essential.

Other courts have affirmed the admission of a
young child=s
statement without express testimony of the child=s
trustworthiness.  For example, in Tissier
v. State, 792 S.W.2d 120, 125 (Tex. App.CHouston
[1st Dist.] 1990, pet. ref=d),
the court affirmed the admission of a physician=s
testimony that the five-year-old victim told him that the defendant had hit him
in the stomach and then told him not to tell anyone about it.  There is no indication in the court=s opinion that the physician offered
any testimony about the child=s
trustworthiness.

The admission or exclusion of a child=s statement to a health-care provider
is necessarily a fact-driven inquiry not susceptible to the application of
bright-line rules.  While no witness
testified that K.D. understood the need to be truthful, the trial court had
evidence that K.D. was seven years old at the time, that she made the
statements while receiving medical care in the hospital, that her statements
were consistent with the physical evidence, that her statements were made in
response to questions from health-care providers about her condition, that her
statements were made outside the presence of any family member and only to
hospital staff, and that the hospital relied upon them.  We cannot say that the trial court abused its
discretion when it determined that the medical treatment hearsay exception
applied.  Issue two is overruled.

 

 








C. 
Witness Exclusion.

Delapaz=s
third issue complains that the trial court abused its discretion by excluding
one of his witnesses pursuant to Rule 614, Athe
Rule.@  Delapaz invoked the Rule following the State=s opening statement.  After the State rested, he attempted to call
Angelica Gonzalez.  The State objected
because she had previously been present in the courtroom.  The trial court conducted a hearing during
which Gonzalez acknowledged that she had been in the courtroom during the State=s case and had heard some of the
testimony.

Delapaz made a record of her expected testimony
and developed that, if allowed, Gonzalez would testify that she was familiar
with Delapaz and Medina=s
residence, that four other adults also lived there, and that Delapaz and
Medina also had overnight guests on occasion. 
Delapaz=s counsel
advised the trial court that he did not realize that Gonzalez had material
information until she spoke with him during a trial recess, at which time he
instructed her not to return to the courtroom. 
The trial court sustained the State=s
objection and did not allow Gonzalez to testify before the jury.

In criminal trials, the Rule=s application must be balanced against
the accused=s right to
call witnesses on his behalf.  Davis
v. State, 872 S.W.2d 743, 745 (Tex. Crim. App. 1994).  As a general proposition, a witness cannot be
excluded solely on the grounds that he or she violated the Rule, although the
trial court=s
exercise of discretion must be considered in light of the particular
circumstances of each case.  Holder v.
United States, 150 U.S. 91, 92 (1893). 
When exercising this discretion, the trial court must balance the
interests of the State and the accused, consider alternative sanctions, and
consider the benefit and detriment arising from a disqualification in light of
the nature and weight of the testimony to be offered.  Webb v. State, 766 S.W.2d 236, 244
(Tex. Crim. App. 1989).  

Because it is undisputed that Gonzalez was present
in the courtroom and heard testimony after the Rule was invoked, we must
perform a two-step analysis.  First, were
there other particular circumstances, other than the mere fact of the
violation, that would tend to show the defendant or his counsel consented,
procured, or otherwise had knowledge of the witness=s
presence in the courtroom, together with knowledge of the content of that
witness=s testimony?
Second, if no particular circumstances existed to justify disqualification, was
the excluded testimony crucial to the defense? 
Id. at 245.








In this instance, the second prong is
dispositive.  Delapaz contends that the
excluded testimony was crucial because it deprived him of the opportunity to
demonstrate to the jury that there were other possible assailants.  This is incorrect.  Gonzalez=s
excluded testimony would have shown that other adults sometimes lived or stayed
at the house, but this fact was uncontested. 
Delapaz testified himself and told the jury that three other relatives
had been living with them, had slept at the house the night of May 14, and were
in the process of moving out.  Medina
testified that four other individuals had been staying at her house but that
she made three of them leave the day before the incident.  Delapaz=s
aunt testified that she saw several other adults at Medina and Delapaz=s house shortly after the incident and
that at least one of them was living there at the time.  Gonzalez=s
excluded testimony, therefore, was cumulative.

Furthermore, the excluded testimony would not have
otherwise impacted Delapaz=s
defense because there was no evidence connecting any other family member to
K.D.=s
injury.  Gonzalez was not in Delapaz=s house the day of the incident.  Delapaz testified that, when Medina went
shopping, he and his children were the only people at home.  He did not claim that any other adult was responsible
for K.D.=s
injuries in the initial statement he provided to the police, in the statement
he provided after his arrest, or in his trial testimony.  Because the excluded testimony was not
crucial to Delapaz=s defense,
we cannot find that the trial court abused its discretion, and issue three is
overruled.

D. 
Ineffective Assistance.

Delapaz contends that his trial counsel was
ineffective for not objecting to statements made by Dr. Lemasters in K.D.=s medical records.  Dr. Lemasters prepared K.D.=s discharge summary and, in that
document, referred to K.D.=s
statements to Foss and Wasson implicating her father.  Delapaz conceded during oral argument that,
if the trial court did not err by admitting Foss=s
and Wasson=s notes,
then trial counsel could not be found constitutionally ineffective.  We have previously found that the trial court
did not err by admitting this evidence and, therefore, overrule Delapaz=s fourth issue.

 

 

 








                                 IV. Holding

The judgment of the trial court is affirmed.

 

 

 

RICK STRANGE

JUSTICE

 

June 14, 2007

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]U.S. Const. amend. VI. 





[2]The text of Delapaz=s second
issue complains that he was unable to examine K.D. or the health-care
professionals who interviewed her. 
Delapaz=s trial objection did not complain of his inability to
cross-examine K.D., and the body of his brief discusses only his inability to
cross-examine the health-care professionals. 
We do not read Delapaz=s second issue to raise a confrontation clause claim
due to his inability to cross-examine K.D. before her medical records were
introduced.  If so, that issue was not
preserved for our review because it was not raised below and has not been
briefed in this court.