In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-15-00024-CR**

**CEDRIC RAYMOND COLQUITT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-09-10759-CR**

## MEMORANDUM OPINION

Cedric Raymond Colquitt challenges his conviction for aggravated robbery on the grounds that: (1) the trial court abused its discretion in refusing to strike the testimony of the complaining witnesses that he contends violated the Rule of exclusion of witnesses; and (2) the evidence is legally insufficient to show that he used or exhibited a firearm during the commission of the robbery. We affirm the trial court's judgment.

1

## I. Background

Brent Brewer testified that he was at The Woodlands Mall with his friend and coworker, Thomas Lupton, on February 18, 2013. While at the mall, a man, identified by Brewer as Colquitt, approached them and asked if they were interested in buying a couple of iPhones "for cheap[.]" According to Brewer, Colquitt told them he would sell them both phones for $320 and denied that the phones had been stolen. Brewer recalled that Colquitt appeared friendly and non-threatening, so Brewer agreed to purchase the phones and went to an ATM to retrieve the money while Colquitt waited at another store. Brewer testified that Colquitt did not have the phones with him in the mall, so Colquitt asked Brewer and Lupton to follow him to his vehicle. Brewer testified that he assumed the phones were in his vehicle, so they followed Colquitt. While walking to the vehicle, Colquitt gave them his cell phone number. Brewer called the number and saw that Colquitt's cell phone rang.

When they arrived at Colquitt's vehicle, Colquitt asked Brewer and Lupton to get inside the vehicle and told them that he was just going to drive to the front of the mall. After they got into the vehicle and started moving, Brewer realized they turned away from the mall, so Brewer asked Colquitt where they were going. According to Brewer, Colquitt responded that he was taking them to his place,

2

which he represented was a loft by the mall. As they drove further away from the mall, Brewer testified that he started to get scared and nervous. Brewer testified that Colquitt eventually turned into the Marquis Apartment complex. Once Colquitt parked, he turned to Brewer and asked him for the money for the phones. When Brewer told Colquitt that he would only give him the money after seeing the phones, Colquitt told Brewer that he would have to "'go inside'" to get the phones and that they could go with him. Brewer and Lupton followed Colquitt up to the second floor of one of the apartment buildings and as Colquitt approached one of the doors, he announced that he had forgotten his keys in the car, then turned away from Brewer. When Colquitt turned back around, Colquitt lifted his t-shirt to reveal the handle and trigger guard of a darker-colored gun that was tucked inside his waistband. Brewer testified that he "immediately thought it was a real pistol." Brewer recalled that Colquitt had been wearing a white t-shirt with blue-jean shorts that day. Brewer had not seen the gun tucked into Colquitt's shorts before Colquitt revealed the gun to them at the apartment complex.

According to Brewer, when Colquitt turned around, his demeanor immediately changed and he became "[v]ery demanding and aggressive" and said, "'Give me the money[.]'" Brewer testified that he was scared for his life. Because he was in fear of bodily injury or death due to the gun exhibited by Colquitt,

3

Brewer immediately gave Colquitt all the money he had in his possession. Colquitt "snatched" the money from Brewer's hand, turned around, and ran down the stairs.

Brewer called 9-1-1 to report the incident. The 9-1-1 recording was played for the jury. Brewer testified that he was in shock when he called 9-1-1 and that his laugh during the call was a reflection of his feeling of disbelief and disappointment in himself for allowing himself to be placed in a situation where he could be robbed. He explained that he did not specifically tell the 9-1-1 operator that the suspect had a gun because he was "flustered" and shaken up, and he believed telling the operator that he had been robbed implied that a gun had been involved.

Brewer testified that a few months after the incident, he was approached by a detective to take part in a line-up to identify the man who had robbed him. He testified that he picked a photograph of Colquitt out of a photospread presented to him by the detective. At the time of the line-up, Brewer told the detective that he was only seventy-five percent certain that Colquitt was the person who had robbed him because Colquitt appeared thinner in the photograph than he had remembered. Though he was not one-hundred percent certain during the line-up, Brewer testified that at the time of trial, he was certain that Colquitt was the person who had robbed him.

4

Thomas Lupton testified that he and Brewer were at the Woodlands Mall on February 18, 2013, when Colquitt approached them and offered to sell them two iPhones. Lupton testified that he was not interested in purchasing one of the phones because he already had one, but Brewer was interested in purchasing the phones. Colquitt offered to sell both phones for $320, and Brewer went to an ATM and withdrew the money for the phones. While walking to Colquitt's vehicle, Lupton recalled that Colquitt gave Brewer his phone number, and Brewer called the number and confirmed it was a working number. Lupton testified that they got into Colquitt's vehicle and Colquitt drove to the Marquis Apartment complex. Lupton recalled that when Colquitt had them get in the vehicle, he told them that they were going to leave the mall parking lot and go to a loft or an apartment nearby. After arriving and parking at the apartment complex, they followed Colquitt to an apartment on the second floor. Lupton testified that as Colquitt approached the apartment, he told them he had forgotten his keys. He recalled that Colquitt positioned himself between Lupton and Brewer, pulled his shirt up at Brewer, then aggressively yelled at Brewer to give him the money. Lupton testified that Brewer immediately handed Colquitt the money and that as Colquitt turned, Lupton immediately saw "what look[ed] like a pistol in [Colquitt's] waistband[,]" so Lupton backed up. Lupton testified that he only saw the butt of the gun and the

5

trigger guard and recalled that the gun was black. Lupton believed Colquitt exhibited a real gun, and in conjunction with his demand, demeanor, and tone, Lupton was in fear for his life. Lupton testified that he has no doubt Colquitt is the person that displayed a gun and committed aggravated robbery against Brewer.

Lupton admitted that after the incident involved in this case, he was arrested for theft from a store and pled guilty to that offense. Lupton testified that he had no reason to lie about the incident involving Brewer and Colquitt and denied that he would perjure himself to help Brewer. During cross-examination, Lupton admitted that prior to the trial, he told defense counsel that he did not feel threatened by Colquitt the day of the incident and that he did not know what the gun looked like. However, Lupton explained that he had just received his sentencing in his theft case and was "flustered" during his conversation with counsel.

At trial, an officer testified that while on patrol on February 18, 2013, he responded to a "robbery call" at an apartment complex around 2 p.m. Upon arrival, he located the complainant, Brewer, who appeared "shaken" and "kind of nervous," which the officer testified was "typical of a victim." Brewer's coworker, Lupton, was also present and appeared "shaken" and "nervous" as well. As part of his investigation, the officer was made aware that a handgun had been used during the robbery. The officer testified that a handgun is a firearm, which is a deadly

6

weapon. Brewer and Lupton described the suspect to the officer. The officer testified that he did not see any signs to indicate that Brewer or Lupton were not being truthful with him regarding the incident.

The officer testified that Brewer and Lupton told him that they were at a store in the mall when someone approached them and asked them if they wanted to buy two iPhones for $320. The man gave them his mobile phone number, which they called to confirm he had given them a working number. They told the officer that they went to the ATM and withdrew the money, and then they met the man and got into his vehicle. The officer testified that Brewer and Lupton both provided witness statements and the statements were consistent with one another.

## II. Violation of the Rule

In his first issue, Colquitt contends that "[t]he trial court erred by allowing [Lupton] to testify after he and [Brewer] violated the rule of exclusion of witnesses." Colquitt contends that Lupton's communication with Brewer "influenced Lupton's testimony, as Lupton's testimony corroborated Brewer's testimony." To support his contention that Lupton and Brewer violated the Rule, Colquitt argues that during the lunch recess, they were observed walking and talking together, and were overheard discussing the trial.

The record reveals that at the beginning of the trial, all witnesses were sworn but, neither party invoked Rule 614 of the Texas Rules of Evidence. During the direct examination of Brewer, the trial court informed the parties that an employee of the court was meeting the delivery person to pick up the jury's lunch. Shortly thereafter and towards the end of the direct examination of Brewer, the court recessed the trial for lunch. The trial court stated on the record, "Let's pause there. We've got a hot lunch. Folks, we're going to take about 30 minutes. About 1:15, we'll start back. Do not be talking about the case. Just enjoy your lunch. Please rise." The record does not specifically state to whom the trial court was speaking when he issued the instruction not to speak about the trial; however, from the surrounding context in the record, we presume he was speaking to the members of the jury.

After lunch, trial resumed with the direct examination of Brewer. When defense counsel cross-examined Brewer after the lunch break, Brewer denied that he and Lupton had recently compared stories about the incident. After the trial court released Brewer, the State called Lupton to testify. At this point in the trial, defense counsel informed the trial court that they would like to invoke "the

Rule[.]"[1] The trial court then stated, "The Rule has been invoked, young man. Be sure you don't talk about what's going on in here. You can talk to lawyers, nobody else." The trial court then asked the attorneys to make sure all of the witnesses understood that the Rule had been invoked.

During defense counsel's cross-examination of Lupton, Lupton denied speaking to Brewer recently about the details of the incident. After the court excused Lupton, the trial judge made the following statement to Lupton, "Young man, listen to my instruction. Don't talk to anybody about anything in here. Don't be listening through doors. Don't talk to Mr. Brewer at all until this trial is over. Counsel will let you know when the trial is over. Okay?" Lupton responded, "Yes, sir." The trial court then asked for Brewer to return to the courtroom.

Outside of the presence of the jury, the trial court asked Brewer whether he was given the court's instruction not to talk to anyone and "not to be worried about what's going on in the courtroom when you went outside[.]" Brewer responded that he had received the instruction. The trial court informed the parties that he had received information that Brewer had been listening in at the courtroom door during the trial. A courthouse employee was sworn in and testified that she had

---

[1] "The Rule," otherwise referred to as Texas Rule of Evidence 614, provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Tex. R. Evid. 614.

observed Brewer "standing at the door with his ear to the door." Defense counsel questioned Brewer about whether he was listening to the trial through the door, and Brewer responded that he "wasn't necessarily listening[,]" but was reading the board by the door to entertain himself. Brewer estimated that he was standing by the door for about twenty seconds and that during that time he could not hear anything that was said in the courtroom. Counsel also questioned Brewer about whether he went to lunch with Lupton earlier that day. Brewer indicated that they had gone to lunch but that they had not discussed the case.

The trial court warned Brewer about the serious nature of the instructions given by the court and that if Brewer violated the rules again, the court would find him in contempt and put him in jail for up to thirty days. The trial court then allowed defense counsel to question Lupton outside the presence of the jury. Lupton admitted that he and Brewer had lunch together, but he continued to deny that they had discussed their respective trial testimony. The trial court reiterated his instruction to Lupton not to speak about the trial and warned that a violation of the Rule could result in jail time.

At the conclusion of the hearing, defense counsel moved for a mistrial on the basis that Brewer and Lupton had violated the Rule. In the alternative, defense counsel asked the trial court to instruct the jury to disregard both witnesses'

testimony. The trial court denied both requests but ruled that defense counsel could recall both Brewer and Lupton and cross-examine them on the allegation that they were colluding in regards to their testimony in this case. The State argued that Brewer, as the victim in a criminal case, was excluded from the Rule unless the court found that his testimony would be materially affected by hearing other testimony at trial. The State also pointed out that Brewer had already testified before he allegedly listened in at the courtroom door. The trial court acknowledged the State's argument, but because Brewer had violated the court's instruction, the court determined that defense counsel could recall Brewer to question him about the allegations.

After a short recess, the trial court reconvened the hearing. A trial spectator was sworn in as a witness. The spectator testified that when the trial court recessed for lunch earlier that day, she observed Lupton and Brewer walking and talking to one another. According to the spectator, she tried to get closer to them to hear what they were saying and overheard one word, "'Marquis.'" The trial court reiterated that defense counsel could recall Lupton and Brewer and could also call the spectator to testify before the jury as to what she had observed during the lunch break, but the trial court refused to grant Colquitt's motion for mistrial.

11

Defense counsel called Brewer during its case-in-chief and asked Brewer if someone had observed him listening in at the courtroom door during the trial. Brewer responded that someone had accused him as stated, and he agreed that he should not have been standing by the door. Brewer maintained that he did not overhear anything while he was standing by the door. Brewer denied talking about the case with Lupton during the lunch break. Brewer also denied fabricating any of his testimony or colluding with Lupton to fabricate the allegations against Colquitt. He testified that nothing he overheard being said in the courtroom influenced the way he testified at trial. The defense rested its case without calling any other witnesses to testify.

On appeal, Colquitt does not challenge the trial court's denial of his motion for mistrial. Colquitt only challenges the trial court's ruling to allow Lupton to testify after Brewer and Lupton had allegedly violated the Rule. Texas Rule of Evidence 614, commonly referred to as "the Rule," codifies the witness exclusion rule. *See* Tex. R. Evid. 614. When it is invoked by either party or the trial court, with some exceptions not applicable here, the Rule requires the exclusion of witnesses from the courtroom during trial so that they cannot hear the testimony of other witnesses. *See id.* The purpose of the Rule is "to prevent the testimony of one witness from influencing the testimony of another, consciously or not." *Russell v.*

*State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Article 36.06 of the Texas Code of Criminal Procedure provides that the court must instruct a witness placed under the Rule that "they are not to converse with each other or with any other person about the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under [the] rule." Tex. Code Crim. Proc. Ann. art. 36.06 (West 2007). Article 36.05 provides that witnesses placed under the Rule are not allowed to hear any testimony in a case. *Id*. art. 36.05.

We review a trial court's decision on whether to exclude a witness who has violated the Rule for an abuse of discretion. *See Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989). If a witness violates the Rule, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). A violation of the Rule only becomes reversible error when the objected-to testimony is admitted and the complaining party is harmed. *Webb*, 766 S.W.2d at 239–40.

In his appellate brief, Colquitt complains that Brewer and Lupton violated the Rule because someone overheard them talking about the trial during the lunch recess and because they went to lunch together. As evidence that the two had

13

spoken of the trial during the lunch recess, Colquitt points only to a trial spectator's testimony that she overheard one of the men say the word "'Marquis,'" which is the name of the apartment complex where Colquitt is alleged to have committed the underlying offense. Brewer and Lupton admitted going to lunch together during the recess, but both men denied talking about the trial during lunch.

Colquitt argues that this was a violation of the Rule and that it occurred after Brewer had testified but before Lupton's testimony. Colquitt argues that the discussion influenced Lupton's testimony. He argues that Lupton had previously told defense counsel that he did not know what the gun looked like, but after having lunch with Brewer, he testified that the gun was black. However, the record reflects that Lupton's memory was not necessarily influenced by Brewer *during* the trial. While cross-examining Lupton on this issue, defense counsel asked Lupton why he had not recalled that the gun was black when counsel spoke to Lupton *prior to trial*. Lupton's ability to recall the color of the gun at trial and his inability to recall what the gun looked like when he spoke to defense counsel prior to trial is not evidence that Lupton's conversation with Brewer at lunch is what influenced Lupton's memory. There are a number of possible explanations to account for this variant.

14

Regardless, even if we were to assume that Brewer and Lupton had spoken about the trial during lunch, our review of the record reveals that the Rule had not been invoked by either party until after the lunch recess. As such, the witnesses' conduct or discussions held during the lunch recess and before they had been placed under the Rule could not have been a violation of the Rule. *See* Tex. R. Evid. 614; *see also Oliver v. State*, No. 01-93-01069-CR, 1994 WL 649097, at \*6–7 (Tex. App.—Houston [1st Dist.] Nov. 17, 1994, pet. ref'd) (not designated for publication) (concluding the trial court did not abuse its discretion in refusing to give a limiting instruction when the record did not show that that the witnesses were placed under the Rule before their conversation took place); *Coons v. State*, 758 S.W.2d 330, 336 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (concluding that the trial court did not err by refusing to exclude the testimony of a witness based on the witness's alleged communication with the complainant in a separate case before invocation of the Rule at trial).

The only other conduct identified to the trial court that could have been considered a violation of the Rule was Brewer's alleged attempt to listen to the trial through the courtroom door. However, Colquitt admits on appeal that because Brewer had already testified at the time he was caught listening at the door, Brewer's testimony could not have been influenced by Lupton's testimony.

15

Colquitt argues that Brewer was likely listening because "[he] was curious as to whether Lupton was testifying in accordance with how he and Brewer had planned their testimony." Moreover, the testimony at trial was that Brewer was only standing by the door for twenty seconds and did not overhear any of the trial testimony during that short period of time. As such, Colquitt has failed to show harm from any violation of the Rule by Brewer. Colquitt argues that he suffered harm as a result of Brewer and Lupton's violation of the Rule; however, his argument that he suffered harm is based not on Brewer and Lupton's violation of the Rule, but rather, on his allegation that they had communicated with one another about the facts of the case prior to trial and prior to the Rule's invocation. We conclude there is no reversible error because Colquitt has failed to show that he was harmed by any violation of the Rule. *See Webb*, 766 S.W.2d at 239–40. We overrule Colquitt's first issue.

### III. Sufficiency of the Evidence

In his second issue, Colquitt contends the evidence was insufficient to support the judgment of conviction for the offense of aggravated robbery. Specifically, Colquitt contends that the evidence was insufficient to show that he used or exhibited a deadly weapon in the course of committing theft.

16

When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *see Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is not our role to sit as the thirteenth juror, and we may not substitute our judgment for that of the factfinder by re-evaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). We defer to the factfinder's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw all reasonable inferences from basic facts to ultimate facts. *Id*. (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he "intentionally, knowingly, or recklessly causes bodily injury to another" or "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02(a) (West 2011). A person commits aggravated robbery if he commits robbery and "(1) causes serious bodily injury to another; (2) uses or

17

exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is . . . 65 years of age or older; or . . . a disabled person." *Id*. § 29.03(a). The offense of aggravated robbery is a first degree felony. *Id*. § 29.03(b). A deadly weapon includes "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury[,]" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(17) (West Supp. 2016).

Colquitt contends that the evidence is legally insufficient to support the jury's conclusion that he used or exhibited a deadly weapon during the commission of the offense because the evidence showed that (1) Brewer did not mention the gun when he called 9-1-1; (2) officers did not respond to the call as promptly as they would for an aggravated robbery call; (3) Brewer and Lupton would have been able to see any gun underneath Colquitt's thin t-shirt before the time they allege he revealed it; (4) Brewer's behavior following the alleged aggravated robbery was inconsistent with how someone would respond after being robbed and threatened with a firearm; and (5) there was no evidence submitted at trial that police recovered the gun allegedly exhibited by Colquitt during the robbery.

18

Colquitt contends that the only evidence offered at trial to support the allegation that he used a gun was the officer's testimony recounting the report given by Brewer the day of the robbery and the testimony of Brewer and Lupton. Colquitt argues that Brewer and Lupton's testimony was not credible because they had the opportunity to create a false story about the existence of the gun and were motivated to lie about its existence to essentially "save face" and "deflect away from them the fact [that] they were attempting to purchase what would have very likely been stolen goods[.]"

In determining whether the evidence is sufficient to support a conviction, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility. *Brooks*, 323 S.W.3d at 894, 899, 912. Here, both Brewer and Lupton testified that Colquitt lifted his shirt to exhibit a gun while demanding that Brewer give him the money. Both men testified that they believed the gun was a "real" firearm. Both men testified that Colquitt's exhibition of the gun left them in fear for their lives. The lack of physical evidence, i.e., the gun used by Colquitt, is simply a factor for the jury to consider in weighing the evidence presented by the State. *See Bailey v. State*, No. 05-09-00959-CR, 2011 WL 1237662, at *4 (Tex. App.—Dallas Apr. 1, 2011, pet. ref'd) (mem. op., not designated for publication); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—

19

Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Based on the evidence, the jury could have reasonably concluded that Colquitt exhibited a gun during the commission of the robbery. We conclude the evidence is sufficient to support the jury's conviction of aggravated robbery. *See Fisher v. State*, No. 01-11-00516-CR, 2013 WL 4680226, at * 4 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, pet. ref'd) (mem. op. on reh'g, not designated for publication) (concluding single eyewitness testimony sufficient to support conviction for aggravated robbery); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (affirming conviction for aggravated robbery when sufficiency of evidence supported by single witness's testimony); *Paige v. State*, No. 05-03-00464-CR, 2004 WL 1472214, at *3–4 (Tex. App.—Dallas July 1, 2004, no pet.) (not designated for publication) (concluding evidence factually sufficient to support finding that defendant used and exhibited a deadly weapon when both complainants testified that defendant lifted his shirt to reveal a brown gun handle and demanded money, that they believed defendant possessed a real gun and felt threatened by him, and immediately complied with the defendant's demand); *see also Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (affirming conviction for attempted murder when only one witness testified that they saw defendant with a gun). We overrule Colquitt's second issue.

Having overruled Colquitt's appellate issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 2, 2016
Opinion Delivered December 7, 2016
Do not publish

Before McKeithen, C.J., Kreger and Horton, JJ.