In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00339-CR
NO. 09-24-00341-CR

_____

**DERRICK KYLES EAGLIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause Nos. 23DCCR0162 and 23DCCR0163**

**MEMORANDUM OPINION**

A jury convicted Derrick Kyles Eaglin of Aggravated Sexual Assault of Child and Continuous Sexual Abuse of a Child under fourteen, both of which are first-degree felony offenses. *See* Tex. Penal Code Ann. §§ 21.02(b), 22.021(a)(2)(B). The jury then sentenced Eaglin to fifty years incarceration in the Texas Department of Criminal Justice for each offense, and the trial court ordered that each sentence be served concurrently.

1

In two issues on appeal, Eaglin argues that the trial court erred by (1) allowing hearsay testimony identifying Eaglin as the perpetrator of the sexual assaults, and (2) excluding the testimony of a defense witness. We affirm.

## Background

We limit our recitation of the background facts to those necessary to address the issues on appeal.[1] The two indictments in this appeal alleged the following.

In cause number 23DCCR0162:

Derrick Kyles Eaglin hereafter styled the Defendant, on or about on this the 9th day of June, 2022, and anterior to the presentment of this indictment, in the County of Jefferson and State of Texas, hereafter styled the Defendant, in Jefferson County, Texas, during a period that was thirty (30) or more days in duration, to-wit: from on or about June 9, 2022 through on or about December 24, 2022, and anterior to the presentment of this indictment, when the Defendant was 17 years of age or older, did then and there commit two or more acts of sexual abuse against [Zoe], a child then younger than 14 years of age and hereafter styled the Complainant, namely, Indecency with a Child under Texas Penal Code Section 21.11(a)(1), or Aggravated Sexual Assault under Texas Penal Code Section 22.021, namely:

> The Defendant, did then and there, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact with the Complainant, by touching the genitals of the Complainant; or

> The Defendant, did then and there, with the intent to arouse or gratify the sexual desire of any person, engage

---

[1]We refer to the victims and their family members by pseudonyms to conceal their identity. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

in sexual contact with the Complainant, by having the Complainant touch the Defendant's genitals; or

The Defendant, did then and there, intentionally or knowingly cause the penetration of the sexual organ of the Complainant, by inserting the Defendant's finger; or

The Defendant, did then and there, intentionally or knowingly cause the penetration of the sexual organ of the Complainant, by inserting the Defendant's sexual organ; or

The Defendant, did then and there, intentionally or knowingly cause the penetration of the sexual organ of the Complainant, by inserting the Defendant's tongue; or

The Defendant, did then and there, intentionally or knowingly cause the penetration of the mouth of the Complainant, by inserting the Defendant's sexual organ; or

The Defendant, did then and there, intentionally or knowingly cause the sexual organ of the Complainant to contact Defendant's mouth; or

The Defendant, did then and there, intentionally or knowingly cause the mouth of the Complainant to contact the Defendant's sexual organ[.]

In cause number 23DCCR0163:

Derrick Kyles Eaglin hereafter styled the Defendant, on or about on this the 1st of June, 2022, and anterior to the presentment of this indictment, in the County of Jefferson and State of Texas, then and there intentionally or knowingly cause the penetration of the sexual organ of [Sue], a child who was then and there younger than 14 years of age by inserting the defendant's finger.

Zoe and Sue testified that Eaglin sexually assaulted them.

3

Relevant to the issues before us, at trial, Jennifer Luna testified that she conducted a forensic interview with Zoe at the Garth House. She testified to the following.

> [THE STATE]: Okay. Now, were -- when you conducted an interview on [Zoe] was she able to tell you when -- and without talking about what occurred, was she able to give -- track and give you a time where you could understand what she was saying?
>
> A. She gave me a time where I could understand what she was saying, yes, sir.
>
> Q. Was she able to give you locations of where?
>
> A. Yes, sir.
>
> Q. And was she able to describe where it was?
>
> A. Yes, sir.
>
> Q. Clearly to you where you understood?
>
> A. Yes, sir.
>
> Q. Now, did you focus on factual issues so that she could identify the person that allegedly did this to her?
>
> A. I'm not sure –
>
> Q. Was she able to tell you -- without saying who it was -- was she able to tell you in the interview who allegedly did these things?
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to have to object because it's based on hearsay of what – her response will be whether or not she could say who did or who didn't say; it's based on hearsay.
>
> [THE STATE]: Just factual –

4

THE COURT: Overruled. As long as she is not saying what specifically the child said. Go ahead.

[THE STATE]: Q. Was she able to identify the person?

A. She was clear on who it was.

Q. And she was clear about it?

A. Yes, sir.

Q. Okay. Was she mature enough to understand the questions that you were asking her and respond to them?

A. She answered appropriately to my questions.

Later, during the Defense's case in chief, Eaglin attempted to call his wife, Zoe and Sue's grandmother, as a rebuttal witness. The following exchange occurred.[2]

THE COURT: I want you to now explain what [Grandmother's] rebuttal testimony would be.

[DEFENSE COUNSEL]: Sure. Some of it occurred over -- there was an allegation it occurred over at her residence. Towel. I would like to know if she ever saw any -- come across a bloody towel. Was there anything in reference to her communicating with my client during the time that they were picking up -- he was picking up the kids. What was her understanding –

THE COURT: But these are all things so far that weren't anything -- that I don't believe would not have been in the discovery that you received with regard to that. So, now we run into the issue that she's been in the courtroom. This, I think, is – I don't think I'm –

_____

[2]Eaglin was Zoe and Sue's step-grandfather.

5

[DEFENSE COUNSEL]: I think that she can clear, or I would hope that -- I mean, it's -- it's my -- I'm calling her as a witness. The State has -- has rested. And based on all the things that have come in reference to the trips, who was on the trips to wherever -- Houston and Colorado and the cruise –

THE COURT: What's –

[DEFENSE COUNESL]: But it shows -- you have -- you have testimony that said it happened every day. And, so, I think there's a question of what did you observe at that time.

THE COURT: Which would have been something that you would have been aware of that you needed to question her before she sat in the courtroom the entire time. I am not going to allow [Grandmother] to testify.

[DEFENSE COUNSEL]: Okay. Then –

THE COURT: I'm not going to make that exception to The Rule.

[DEFENSE COUNSEL]: I can -- I can -- if I can make a record of it, Judge.

THE COURT: Yeah, of course.

[DEFENSE COUNSEL]: I think that [Grandmother] is necessary based on what the State has presented, specifically that there were allegations that they were all over the place in reference that it happened every day, that he used condoms, and the question of did -- did she ever discover any of that stuff, the bloody towel that was part of the testimony. Did she ever discover any of that stuff or anything out of place in reference to say, oh, yeah, now I think something was going on. The dynamics in the family that we've now heard of in reference to what was going on and the people that were there not there at the time. And I believe that I have a right to call her to clarify, to rebut these things, and if I had a record of it, I could underline everything that I would have questions on. But that's the reason why I would call her, Judge.

THE COURT: Okay. Give me just a second. I have got a couple cases that were just sent to me that are the leading cases with regard to this that I want to take a quick look at based on what has now been put on the record.

. . .

THE COURT: [] Now, with regard to [Grandmother], I have no doubt that the defendant, as well as his attorney, knew [Grandmother] was in the courtroom the entire time and don't believe there's anything that [Defense Counsel] has put on the record with regard to what her possible testimony would be that is -- I would consider crucial. I think she's -- the whole point, obviously, of The Rule is to keep witnesses from sitting and being able to listen and being influenced by all the other testimony and then know what to come in and say because they've heard everyone else says is the whole point of it. I think it goes against the complete spirit of that rule.

. . .

[THE COURT]: All right. Y'all have a seat. All right. Based on the information and the law…. I am not going to allow [Grandmother] to testify.

[…]

[THE COURT]: [Grandmother] … like I already stated, has been in the courtroom the entire time. There's no doubt that Mr. Eaglin and [Defense Counsel] knew that she was in here the entire time. I don't think there's anything that came out factually that has been given to me as information on any specific surprise or something that would not have been something that could have been anticipated from what you had in the discovery, [Defense Counsel].

At the conclusion of trial, the jury convicted Eaglin of Continuous Sexual

Assault of Child and Aggravated Sexual Assault of Child. Eaglin was sentenced to

7

fifty years incarnation in the Texas Department of Criminal Justice. Eaglin timely appealed.

## Issue One

In his first issue, Eaglin argues the trial court erred in admitting the hearsay testimony from a non-outcry witness, Jennifer Luna, the forensic interviewer. He contends the State used Luna's testimony to improperly bolster other evidence identifying Eaglin as the perpetrator. The parties agree that Luna did not testify that Zoe named Eaglin, but Eaglin contends the testimony bolstered a highly contested issue regarding the perpetrator's identity. At trial, over Eaglin's objection, Luna testified that Zoe was "clear on who" abused her, but Luna did not say who Zoe identified.

We review the admission of evidence under an abuse-of-discretion standard. *See Bingham v. State*, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999) (citations omitted). If we determine the trial court erred in failing to sustain an objection to the hearsay testimony, we must determine whether the error caused harm. *See* Tex. R. App. P. 44.2; *Cordero v. State*, 444 S.W.3d 812, 819–20 (Tex. App.—Beaumont 2014, pet. ref'd). Because the admission of inadmissible hearsay is non-constitutional error, we consider it harmless if, after examining the record as a whole, we are reasonably assured the error did not influence the jury or had but slight effect. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (citations omitted); *Cordero*,

444 S.W.3d at 820. Likewise, "inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove." *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (citations omitted); *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (citations omitted).

Eaglin complains the trial court improperly admitted Luna's testimony over his hearsay objection which, he contends improperly bolstered the credibility of the child. Hearsay is an out-of-court statement made by the declarant that "a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). The defense essentially argues the State used Luna's testimony to enter hearsay statements of Zoe, as the declarant. *See id*. 801(b) (defining "declarant"). Even if we assume without deciding that the trial court erred in admitting Luna's testimony based on the record as a whole, we conclude it was harmless as Eaglin's identity as the perpetrator came in through other witnesses and evidence. *See Johnson*, 967 S.W.2d at 417; *Mayes*, 816 S.W.2d at 88. Zoe testified at trial that Eaglin sexually assaulted her several times by putting his mouth or sexual organ in or on her mouth and vagina. Sue also identified Eaglin as the perpetrator of her sexual assaults when he put his finger in her vagina. The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for aggravated sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b)(1)

9

(providing that a child's testimony alone is sufficient to support a conviction for aggravated sexual assault when the child is under the age of seventeen at the time of the alleged offense); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). Finally, Zoe's and Sue's mother testified she was told by her son that Zoe said Eaglin had been "messing with" her, during the defense's case in chief. Even if we assume the trial court erred in admitting Luna's testimony, any such error was harmless because evidence regarding the identity of the perpetrator was admitted through multiple other witnesses. *See Johnson*, 967 S.W.2d at 417; *Mayes*, 816 S.W.2d at 88. We overrule issue one.

**Issue Two**

Appellant's second issue argues that the trial court erred by excluding Grandmother's testimony for violating the rule of sequestration ("the Rule"). According to Appellant, Grandmother's testimony was relevant and admissible to rebut evidence presented by the State, specifically that "her testimony was necessary to present the defense that [Grandmother] never discovered items such as condoms, the towel, or items out of place, which explanations were part and parcel of presenting a complete defense." Eaglin argues that although the trial court advised defense counsel to admonish any potential witnesses about "the Rule," "Appellant explained that he was not aware [Grandmother] would have been necessary as a witness until the presentation of the State's evidence[,]" and the trial court denied

10

him the opportunity to present a complete defense to the jury, violating his constitutional rights under the federal and Texas Constitutions.

Under the Rule, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Tex. R. Evid. 614. At the beginning of Eaglin's trial, the State invoked the Rule, and the trial court instructed both counsel to admonish their witnesses with regard to the Rule. Defense counsel responded, "We will, your honor."

The next day, the defense called Grandmother as a rebuttal witness. When defense counsel told the trial court that Grandmother had been in the courtroom during testimony, the State refused to waive the Rule. Defense counsel did not dispute that the Rule was invoked at the beginning of trial but argued he was unaware that he would need Grandmother as a rebuttal witness until the State presented its evidence. During a discussion out of the jury's presence, defense counsel argued the following regarding the necessity of Grandmother's testimony.

> . . . .
>
> I think that she can clear, or I would hope that -- I mean, it's – it's my – I'm calling her as a witness. The State has -- has rested. And based on all the things that have come in reference to the trips, who was on the trips to wherever -- Houston and Colorado and the cruise –
>
> . . . .
>
> But it shows -- you have -- you have testimony that said it happened every day. And, so, I think there's a question of what did you observe at that time.

11

. . . .

The Court then ruled Grandmother would not be allowed to testify, explaining:

> [Grandmother]. . . like I already stated, has been in the courtroom the entire time. There's no doubt that Mr. Eaglin and [defense counsel] knew that she was in here the entire time. I don't think there's anything that came out factually that has been given to me as information on any specific surprise or something that would not have been something that could have been anticipated from what you had in the discovery[.]

After testimony from two other witnesses, the defense then rested its case.

The Court of Criminal Appeals has explained that under "the Rule," a trial court must order witnesses excluded from the courtroom during the testimony of other witnesses, upon a party's request. *See id.* 614; *Guerra v. State*, 771 S.W.2d 453, 474–75 (Tex. Crim. App. 1988) (citing Tex. Code Crim. Proc. Ann. art. 36.05 stating "in no case where the witnesses are under [the] rule shall they be allowed to hear any testimony in the case[]"); *see also Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (citing a previous version of the Rule). We review a trial court's decision to exclude a defense witness for violating the Rule under an abuse-of-discretion standard. *See Webb v. State*, 766 S.W.2d 236, 244 (Tex. Crim. App. 1989); *Green v. State*, 682 S.W.2d 271, 294 (Tex. Crim. App. 1984). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz v. State*, 279

S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391(Tex. Crim. App. 1990) (en banc) (op. on reh'g)).

When a trial court considers disqualifying a defense witness for violating the Rule, it must weigh both the interests of the State and the defendant's right to defend himself. *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003). In reviewing a trial court's decision to disqualify a witness, we apply the test outlined in *Webb v. State*. *See id.* First, under the *Webb* test, if the Rule was violated and the witness is disqualified, we look to whether there were particular circumstances, other than the mere fact of the violation, that would tend to show the defendant or his counsel consented, procured, or otherwise had knowledge of the witness's violation, together with knowledge of the content of that witness's testimony. *Webb*, 766 S.W.2d at 244; *see also Routier*, 112 S.W.3d at 590. Second, under the *Webb* test, if no particular circumstances existed to justify disqualification of the witness, we consider whether the excluded testimony was "'extraordinary' in the sense that it was crucial to his defense." *Webb*, 766 S.W.2d at 245.

> Where the "particular and extraordinary circumstances" show neither the defendant nor his counsel have consented, procured, connived or have knowledge of a witness or potential witness who is in violation of the sequestration rule, and the testimony of the witness is crucial to the defense, it is an abuse of discretion exercised by the trial court to disqualify the witness.

*Id.* at 244; *see also Braswell v. Wainwright*, 463 F.2d 1148, 1156 (5th Cir. 1972) (cited by *Webb*, 766 S.W.2d at 241–42). So, a trial court should not prevent a witness

13

from testifying solely because he violated the Rule, but a trial court does not err by excluding a witness's testimony if it finds that the excluded testimony was not crucial to the defense. *See Routier*, 112 S.W.3d at 592 (citing *Holder v. United States*, 150 U.S. 91, 92 (1893)). We apply the *Webb* standard on a case-by-case basis. *See Webb*, 766 S.W.2d at 244.

Even if a trial court errs in excluding a witness under Rule 614, "the error is non-constitutional and will be disregarded unless it affected the appellant's substantial rights." *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (citing Tex. R. App. P. 44.2(b)). "'A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.'" *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)) (other citation omitted); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

Appellant argues that the trial court erred by excluding Grandmother's testimony and that the testimony was "part and parcel of presenting a complete defense[]" because Grandmother was an eyewitness who lived in the home where one of the assaults occurred and could testify that she never found anything amiss nor any sexual items during the times of the assault. At trial, defense counsel argued that Mother and Grandmother should be exempt from the Rule, and explained their anticipated testimony. The trial court allowed Mother to testify, explaining, "[b]ased

14

on the information and the law, I am going to allow [Mother] to testify" because "I don't think [Defense Counsel] knew that [Mother] was here. She was on the witness list. And, so, I think he had every right to rely on the fact that she was a potential witness, shouldn't have been in the courtroom." As for Grandmother, the trial court found the State's evidence did not surprise the defense nor was it something the defense could not have anticipated based on discovery. The trial court also noted that defense counsel and Eaglin knew Grandmother was in the courtroom. We cannot say the trial court's ruling was an abuse of discretion because it was within the zone of reasonable disagreement.

But even if the trial court erred in excluding Grandmother's testimony, Appellant has not shown that his substantial rights were harmed by the trial court's ruling. *See* Tex. R. App. P. 44.2(b); *Russell*, 155 S.W.3d at 181. Zoe and Sue both testified they were assaulted at their home while they were alone with Eaglin. In particular, Zoe testified to multiple assaults in her home when no other adults were present. Zoe testified she was assaulted at Grandmother's home only one time, and Grandmother was not home at the time. Any testimony Grandmother could have offered that she did not observe anything unusual would not have negated Zoe's and Sue's testimony about the other assaults. Based on the record as a whole, we can say with reasonable assurance that any error in excluding Grandmother's testimony had

15

but a slight effect and did not injure Eaglin's substantial rights. *See* Tex. R. App. P. 44.2(b); *Russell*, 155 S.W.3d at 181. We overrule Eaglin's second issue.

## Conclusion

Having overruled all Eaglin's issues on appeal, we affirm the trial court's judgments.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 8, 2025
Opinion Delivered August 20, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Chambers, JJ.